COMMONWEALTH vs. ARTHUR R. SCALISE
(and companion cases[1]).

Berkshire.  May 7, 1982. — September 15, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Search and Seizure*, Forcible entry by police.  *Constitutional Law*, Search and seizure.

The fact that objects named in a search warrant are by their nature amenable to ready destruction, such as narcotics, does not give police officers an automatic exception to the requirement that they knock and identify themselves when executing the warrant.  [417-420]

When police officers applying for a search warrant show probable cause to believe that the evidence which is the object of the warrant will be destroyed, a magistrate has the authority to issue a warrant dispensing with the requirement that police officers knock and identify themselves.  [420-421]

Where police officers have been issued a search warrant dispensing with the requirement that they knock and identify themselves before conducting the search, and circumstances justifying the issuance of such a warrant no longer exist when the warrant is executed, the police officers at the scene are required to make a threshold reappraisal of the necessity of making an unannounced entry.  [421-422]

Where police officers had been given information that a narcotics dealer had moved from place to place to avoid police surveillance and this information was corroborated by police observation, and where information that the dealer was retailing the narcotics justified the inference that the drugs were kept in small packages and hence were easily disposable, a search warrant dispensing with the requirement that police knock and announce their purpose was valid, as was the search conducted pursuant to the warrant on the day it was issued.  [422-423]

INDICTMENTS found and returned in the Superior Court Department on February 3, 1981.

---

[1] Against Scalise and Stephen G. Claffie.

Motions to suppress evidence were heard by *Alberti*, J.

The Commonwealth's application for an interlocutory appeal, filed in the Supreme Judicial Court for the county of Suffolk, was allowed by *Nolan*, J.

*Lee Diane Flournoy*, Assistant District Attorney, for the Commonwealth.

*Leonard H. Cohen* for Stephen G. Claffie.

*Margaret H. Van Deusen* for Arthur R. Scalise.

LIACOS, J. The defendants were indicted for possession of cocaine and marihuana with intent to distribute and for possession of ephedrine.[2] All indictments arise as a result of the execution of a search warrant by the police at an apartment shared by the defendants. Prior to trial, the defendants moved to suppress all items seized under the warrant. The only issue argued to the motion judge was that entry under the warrant was illegal because the police failed to knock and identify themselves before they entered the defendants' apartment.[3] The judge allowed the motions to suppress. A single justice of this court granted the Commonwealth's application for leave to appeal the ruling of the trial judge to this court. See Mass. R. Crim. P. 15 (b) (2), (3), 378 Mass. 882 (1979). We now reverse.

The evidence presented at the hearing on the motion to suppress was confined to the warrant, affidavit, and the return on the warrant. The facts gleaned from these documents and the judge's memorandum of decision are as follows.

On or about July 28, 1980, Officer David Viner of the Pittsfield police department was approached by an informant who stated that the defendant Scalise was dealing in

---

[2] The defendant Scalise was also indicted for possession of hashish.

[3] The defendants claim to have raised several other grounds in the trial court in support of their motions to suppress and to have reserved their right to assert them later. The motion judge appears to have considered these issues as waived. In any event, neither defendant has briefed these issues before us, and thus the issues are deemed waived here. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). The parties agreed at oral argument that the issue whether the warrant was supported by probable cause is not before the court.

drugs, mostly marihuana, out of an apartment at White Terrace in Pittsfield. The informant told Officer Viner that he had personally purchased some marihuana from Scalise, who usually sold marihuana in quarter pound or larger amounts.

Approximately one month later, "a responsible adult citizen" told Officer Viner that Scalise had lived at White Terrace in a particular apartment with Scalise's brother and the brother's girl friend. Officer Viner learned from the citizen that Scalise had moved out of the apartment around August 1 and that, while Scalise had lived in the apartment, young men and women would enter the building, ask directions to Scalise's apartment, stay a few minutes, and leave. The citizen told Officer Viner that he had seen as many as fifty people in a day go to Scalise's apartment and that he believed that Scalise was selling drugs.

A few days later, a detective in the Pittsfield police department learned from an informant that a person known as Hopper Lyons was living on West Housatonic Street in Pittsfield and was selling cocaine, hashish, and marihuana from that address. On the same day, Officer Viner learned from an informant that Scalise was living with Lyons and selling drugs from the West Housatonic Street apartment. The next day, Officer Viner and another police officer, Henry Ferris, set up surveillance of the West Housatonic Street apartment. They observed that entry to the apartment was by means of a fire escape outside the building leading to the door of the apartment. During the three hours that they watched, the officers saw approximately ten people enter the apartment and leave after remaining only a few minutes. As some of these persons left, they were holding "plastic bags of the type used to contain marihuana." The officers also saw a Doberman pinscher dog tied at the bottom of the fire escape and watched someone substitute a second Doberman, which appeared "quite vicious." Scalise was observed by the officers entering and leaving the apartment and talking to different people who were in and out of the apartment. The officers also observed Scalise leaving

the apartment carrying what appeared to be his personal property. The officers believed that Scalise was moving.

On or about September 2, 1980, Officer Ferris received information from an informant that Scalise had been selling drugs at West Housatonic Street, but had become afraid and decided to move after receiving information that he might be under surveillance. Approximately one week later, Officer Viner received information from an informant that Scalise had moved to 38 North Pearl Street in Pittsfield. The informant told Officer Viner that Scalise had been selling "crystal meth" amphetamines at that location but was currently out of supply.

A few days later, an informant told Officer Viner that Scalise was selling hashish and other drugs at the North Pearl Street address, and that Stephen Claffie was also living there and selling drugs. Officer Viner searched the informant and gave him money. Officer Viner and Sergeant David Boyer, the affiant, watched the informant knock and enter at 38 North Pearl Street. They watched the informant come out and followed him to another location where he turned over to the officers cocaine and hashish which he had bought from Scalise in the presence of Claffie.

A day or two later, Sergeant Boyer appeared before a magistrate and applied for a search warrant, setting out these facts. The officer requested permission to enter without knocking or announcing because of "the eas[y] method in which these articles of controlled substances can be disposed." The magistrate found probable cause to search and issued a search warrant marked "No Knock Warrant." The warrant authorized a search of three bedrooms on the second floor, three rooms on the first floor, and the basement and attic of the wood frame house at 38 North Pearl Street, Pittsfield. The objects of the search described in the warrant were "[a]ll illegally possessed controlled substances as defined in MGL C. 94C and in particular marihuana, also all drug paraphernalia, also Cocaine and Hashish [and] [a]ll class A thru E controlled substances." The warrant was executed on the same day. Entrance was without announce-

ment, and quantities of controlled substances and drug paraphernalia were seized.

The Commonwealth claims that the judge erred by suppressing the evidence seized as a result of the execution of this warrant. It argues that police executing a search warrant should not be required to knock and announce identity and purpose when they have an articulable reason to fear for their safety or the destruction of evidence. The judge, recognizing that the knock and announce rule was part of our common law, ruled that there was no "blanket" exception to the rule where easily destroyed items, such as drugs, are involved and then concluded that there was otherwise insufficient evidence to invoke an exception to the rule. We conclude that the judge was correct in ruling that there is no blanket exception to the knock and announce rule which can be invoked where the object of the search is drugs. We disagree, however, with the judge's conclusion that the circumstances in the case were insufficient to invoke a destruction of evidence exception to the knock and announce rule.

This court has recently examined the history of the common law rule that forbids police officers from making an unannounced entry into a dwelling house except in limited circumstances. See generally *Commonwealth* v. *Cundriff*, 382 Mass. 137, 140-147 (1980), cert. denied, 451 U.S. 973 (1981). We reaffirm the views there stated: "History teaches that the announcement requirement is a part of our common law. We add that the policies underlying the announcement rule at common law, i.e., decreasing the potential for violence, protection of privacy, and prevention of unnecessary damage to homes, are as valid today as they were in the past."[4] *Id.* at 146.

---

[4] We note that the recent enactment by the Legislature of a statute purporting to increase the right of home owners to use deadly force when there has been unlawful entry into their homes adds further validity to the views expressed in *Commonwealth* v. *Cundriff*, 382 Mass. 137 (1980), cert. denied, 451 U.S. 973 (1981). Compare G. L. c. 278, § 8A, inserted by St. 1981, c. 696, with *Commonwealth* v. *Shaffer*, 367 Mass. 508 (1975).

In *Cundriff*, however, we held that where the police had reason to fear for their own safety, as well as the safety of others in the dwelling, the failure of the police to identify themselves and announce their purpose when executing an arrest warrant was justified as a matter of our common law.[5] In *Cundriff* we also noted that "[o]ther exceptions to the knock and announce rule have been recognized where the person inside the dwelling to be entered has knowledge of the officers' purpose and presence, see *Ker* v. *California*, 374 U.S. 23, 47 (1963) (Brennan, J., dissenting); *Commonwealth* v. *McDougal*, 2 Mass. App. Ct. 820 (1974), and cases cited, and where making an announcement would facilitate a suspect's escape or the destruction of evidence, see *Miller* v. *United States*, 357 U.S. 301, 309 (1958) (dictum) (citing *People* v. *Maddox*, 46 Cal. 2d 301 [1956]); *Ker* v. *California, supra* at 47 (Brennan, J., dissenting); *United States* v. *Cisneros*, 448 F.2d 298, 304 (9th Cir. 1971) (possibility of escape)." *Commonwealth* v. *Cundriff, supra* at 147 n.15.

Many courts have held, as a matter of common law, or by statutory authority, that police are excused from the usual knock and announce requirement when reasonably acting to prevent destruction or disposal of the items named in the search warrant. See, e.g., *People* v. *Gastelo*, 67 Cal. 2d 586, 587-588 (1967); *People* v. *Ouellette*, 78 Ill. 2d 511 (1979); *State* v. *Lien*, 265 N.W.2d 833 (Minn. 1978); *State* v. *Gassner*, 6 Or. App. 452 (1971). In *Ker* v. *California, supra*, a four member plurality of the Court recognized the destruction of evidence exception when it upheld action of police officers in entering the defendant's dwelling without prior notice in order to arrest him. The Court stated that "[h]ere justification for the officers' failure to give notice

---

[5] Although *Commonwealth* v. *Cundriff, supra*, dealt with the knock and announce rule in the context of the execution of an arrest warrant, it is generally assumed that the rule and its exceptions apply equally to search warrants. See 2 W. LaFave, Search and Seizure § 4.8, at 123-124 (1978), and cases cited. See also *Commonwealth* v. *Huffman*, 385 Mass. 122, 125 n.5 (1982); *Commonwealth* v. *Cundriff, supra* at 143 n.6.

is uniquely present. In addition to the officers' belief that Ker was in possession of narcotics, which could be quickly and easily destroyed, Ker's furtive conduct in eluding them shortly before the arrest was ground for the belief that he might well have been expecting the police. We therefore hold that in the particular circumstances of this case the officers' method of entry, sanctioned by the law of California, was not unreasonable under the standards of the Fourth Amendment as applied to the States through the Fourteenth Amendment" (footnote omitted). *Ker, supra* at 40-41. The dissenters in *Ker* agreed that there was an exception to the knock and announce rule when officers had reason to believe that someone inside the dwelling was attempting to destroy evidence. *Ker, supra* at 47, 61 (Brennan, J., dissenting). The members of the Court disagreed only as to the sufficiency of the evidence in *Ker* tending to give rise to the exception.

Some State courts have interpreted *Ker* as establishing a blanket rule of exception, i.e., the destruction of evidence exception is established when the objects named in the search warrant are by their nature amenable to ready disposal or destruction, such as narcotics or gambling records. 2 W. LaFave, Search and Seizure § 4.8, at 132 (1978). See, e.g., *People* v. *De Lago*, 16 N.Y.2d 289 (1965), cert. denied, 383 U.S. 963 (1966); *State* v. *Spisak*, 520 P.2d 561 (Utah 1974). Because the disagreement in *Ker*, however, was over how much evidence supporting the exception to the knock and announce rule was required, not over whether any particularized showing was required, *Ker* is generally interpreted as foreclosing blanket exceptions. See, e.g., *People* v. *Gastelo, supra*; *State* v. *Harris*, 12 Wash. App. 481 (1975). Thus, the major area of disagreement in the State courts since *Ker* has been over the proper scope of the destruction of evidence exception. *State* v. *Gassner, supra* at 461.

In the instant case, the Commonwealth argues first that a magistrate has the authority to issue a warrant dispensing with the knock and announce requirement, and second that

the unannounced entry was justified here even if the magistrate could not issue such a warrant.[6]

The relevant statutory provisions dealing with the authority of a magistrate to issue a warrant are G. L. c. 276, §§ 1, 2, & 2A. The statute is silent on the issue of the magistrate's authority to issue a no knock warrant. Section 1 of c. 276, however, states: "Nothing in this section shall be construed to abrogate, impair or limit powers of search and seizure granted under other provisions of the General Laws or under the common law." St. 1964, c. 557, § 1. The knock and announce requirement is part of our common law. We conclude it to be a sound principle that the decision whether to dispense with the requirement of announcement should be left to judicial officers, whenever police have sufficient information at the time of application for a warrant to justify such a request. Accord, *State* v. *Parker*, 283 Minn. 127 (1969). Although advance judicial determination is not constitutionally required, "constitutional policy holds [that] the informed and deliberate determination of a magistrate is preferred over the hurried action of an officer." *Parsley* v. *Superior Court*, 9 Cal. 3d 934, 943 (1973) (Clark, J., dissenting), citing *United States* v. *Lefkowitz*, 285 U.S. 452, 464 (1932). See *State* v. *Carufel*, 112 R.I. 664, 668 (1974) (knock and announce rule has constitutional dimensions). Further, in some instances "the Constitution requires 'that the deliberate, impartial judgment of a judicial officer . . . be interposed between the citizen and the police.'" *Katz* v. *United States*, 389 U.S. 347, 357 (1967), quoting from *Wong Sun* v. *United States*, 371 U.S. 471, 481-482 (1963). See The Magistrate's Role in Unannounced Entry, 26 Hastings L.J. 273, 275 (1974) (prior judicial review required by Fourth Amendment whenever facts justifying unannounced entry known when search warrant obtained); No-Knock and the Constitution:

---

[6] None of the parties contend that police seeking to execute a search warrant, without first knocking, must in all cases seek and obtain prior authorization by a magistrate.

The District of Columbia Court Reform and Criminal Procedure Act of 1970, 55 Minn. L. Rev. 871, 891-892 (1971) (benefits of prior judicial review can be realized in instances where facts relied upon for no knock warrant known in advance). Cf. *Michigan* v. *Summers*, 452 U.S. 692, 704 (1981).

We recognize that the facts existing at the time the warrant is issued may no longer exist at the time the warrant is executed. In those instances, the officers would be required to knock and announce their purpose. The changed circumstances would render ineffective the magistrate's decision that a no knock entry was justified. 26 Hastings L.J., *supra* at 285. Thus, the police officers at the scene are required to make a threshold reappraisal of the actual threat of the destruction of evidence.[7] See *State* v. *Lien*, 265 N.W.2d 833, 839 (Minn. 1978).

In order to obtain authority for an unannounced entry, the police must inform the issuing magistrate of the circumstances which give the police probable cause to believe that the evidence, i.e., the object of the search, will be destroyed. This requires more than simply showing that drugs are involved. See *People* v. *Gastelo, supra* at 588; *State* v. *Lien, supra* at 838. See generally LaFave, *supra* at 131 & n.54. We decline to adopt the blanket rule that invokes the destruction of evidence exception whenever the objects named in the search warrant are by their nature amenable to ready disposal or destruction, see LaFave, *supra* at 131. The police must have probable cause to believe that the evidence will be destroyed, based on other factors uniquely present in the particular circumstances. See *Ker* v. *Cali-*

---

[7] Whether there were changed circumstances in the instant case prior to the execution of the warrant, such that the exigency no longer was present, is unknown to this court because no evidentiary hearing was held on the motion to suppress. We note, however, that the warrant was executed on the same day that it was issued. The factors that we have identified, *infra*, as giving rise to the exigency, i.e., presence of narcotics and Scalise's awareness that he was under surveillance, would be unlikely to change in so short a period of time.

*fornia, supra* at 40-41.[8] "Just as the police must have suffi-
ciently particular reason to enter at all, so must they have
some particular reason to enter in the manner chosen." *Peo-
ple* v. *Gastelo, supra* at 589.

We now turn to the particular circumstances in this case.
We conclude that the magistrate was justified in finding on
the face of the affidavit that the facts were sufficient to give
rise to probable cause to believe that the evidence would be
destroyed if the police knocked and announced their pur-
pose before entering the apartment. In addition to the in-
formation showing that the defendants were probably in il-
legal possession of controlled substances which could be
quickly and easily destroyed, the magistrate could have
found probable cause to believe that Scalise's furtive con-
duct in moving from place to place was in order to avoid ap-
prehension. He could also have concluded the defendants
were aware of police surveillance and were prepared quick-
ly to dispose of incriminating evidence in the event of a
police search. *Ker* v. *California*, 374 U.S. 23, 40 (1963).
Because the defendants were retailing the narcotics, the
magistrate could have inferred that the drugs were kept in
relatively small packages and, hence, were easily dispos-
able. "Reasonable inferences and common knowledge are

---

[8] Nothing we say here today derogates from the principles established in
*Commonwealth* v. *Cundriff*, 382 Mass. 137 (1980), cert. denied, 451 U.S.
973 (1981). In *Cundriff* we recognized that, even without prior judicial
authorization, the failure of the police to make an announcement before
entering a dwelling to make an arrest may sometimes be justified. *Id.* at
140. Thus, if the police have no reason to seek advance authorization,
they may still make an unannounced entry to execute a warrant if facts
arising at the threshold give them probable cause to believe that an unan-
nounced entry is necessary in order to prevent destruction of the evidence.
*State* v. *Lien*, 265 N.W.2d 833, 839 (Minn. 1978). The circumstances
arising at the threshold must amount to exigent circumstances to justify
the failure to obtain advance judicial authorization to dispense with the
knock and announce requirement. See *Commonwealth* v. *Huffman*, 385
Mass. 122, 124-126 (1982). Accord, *People* v. *Lujan*, 174 Colo. 554, 560
(1971). The standards as to exigency are strict, and the burden is on the
Commonwealth to demonstrate that exigency in the totality of the cir-
cumstances. See *Commonwealth* v. *Forde*, 367 Mass. 798, 800-801
(1975).

appropriate considerations in determining probable cause." *Commonwealth* v. *Alessio*, 377 Mass. 76, 82 (1979). The magistrate could reasonably have inferred from the facts before him that a dealer who had moved his location and feared police surveillance, also feared arrest and search and was ready to destroy the drugs, and that a "no knock" entry was required.

Assuming that the informants' credibility and the reliability of their information were insufficient, without more, to permit a finding of probable cause under the "two-pronged" test of *Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964), we conclude that the affidavit, taken as a whole, showed sufficient police corroboration of the information. See *Commonwealth* v. *Alessio, supra*.[9] Although Scalise's moving from place to place, standing alone, might be ambiguous conduct, and thus an insufficient circumstance from which to draw the conclusion that he was seeking to elude the police, the inference that he was seeking to elude the police was corroborated by an informant's tip and properly could be relied upon in deciding whether to dispense with the knock and announce requirement.

The orders of the judge allowing the defendants' motions to suppress are reversed. We leave it to the discretion of the judge as to whether a further evidentiary hearing is warranted to determine the need for an unannounced entry at the time of the execution of the warrant.

*So ordered.*

---

[9] The police personally observed Scalise move from the West Housatonic Street address. Five days later, an informant told the police that Scalise had moved because he was afraid that he was being watched by the police. The police, who had been watching Scalise at that address, knew from their own observations that Scalise had resided on West Housatonic Street for a short period of time.