## COMMONWEALTH *vs.* MARANGELY TAPIA.

Plymouth. March 6, 2012. - November 14, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Controlled Substances. Firearms. Constitutional Law,* Search and seizure, Probable cause. *Practice, Criminal,* Motion to suppress, Warrant, Affidavit. *Search and Seizure,* Warrant, Affidavit, Probable cause. *Probable Cause.*

A Superior Court judge erred in granting a criminal defendant's pretrial motion to suppress contraband (a firearm and significant quantities of heroin and cocaine) found by police in a search of her apartment, where the affidavit supporting the underlying search warrant demonstrated facts (namely, direct police observations of the defendant's activities, including a single instance where she left her home to go to the location of a controlled purchase, and a statement by an informant) that established a sufficient nexus between the defendant's drug-selling activities and her residence to support a finding of probable cause to search. [725-730]

INDICTMENTS found and returned in the Superior Court Department on June 27 and November 10, 2008.

A pretrial motion to suppress evidence was heard by *Jeffrey A. Locke,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Spina,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court. After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Mary E. Lee,* Assistant District Attorney, for the Commonwealth.

*John S. Redden,* Committee for Public Counsel Services, for the defendant.

LENK, J. Based on an informant's tip, as well as police observation of three controlled drug purchases and additional surveillance, police obtained a warrant to search the defendant's apartment. They found a firearm, as well as significant quantities of heroin and cocaine. On this basis, the defendant was

charged with various drug and firearm offenses.[1] She moved to suppress the contraband as the fruit of an unlawful search of her apartment. As relevant here, the defendant claimed that the affidavit supporting the search warrant was insufficient to establish probable cause to believe that drugs would be found in her residence because the information in the affidavit did not prove an adequate "nexus" between her drug sales and her residence. See *Commonwealth* v. *Escalera*, 462 Mass. 636, 642-643 (2012). A Superior Court judge agreed and allowed the motion to suppress.

For the reasons that follow, we conclude that the affidavit supporting the search warrant set out sufficient facts to establish probable cause to search the defendant's apartment. We therefore reverse the order allowing the motion to suppress.

1. *Facts and prior proceedings.* On March 28, 2008, Officer Gary R. Mercurio of the Brockton police department sought a search warrant for "957 Warren Ave. Apt. # 3 (3rd Floor) Brockton." In support of this warrant, Mercurio filed a twelve-page affidavit. Because the sole issue is the sufficiency of that affidavit, we recite in detail the facts it sets forth. See *Commonwealth* v. *Donahue*, 430 Mass. 710, 712 (2000).

In March, 2008, the affiant, Mercurio, along with other Brockton officers, began a drug investigation based on a tip from a confidential informant. According to the informant — who had "proven [his[2]] reliability in the past by providing information and conducting controlled purchases of narcotics, which led to arrests and seizures of narcotics" — he could purchase heroin from a Hispanic female known to him as "Nana" by calling a designated telephone number. By the informant's description, Nana was tall with a thin build, and "always" delivered the

---

[1]The drug charges include trafficking in twenty-eight to one hundred grams of cocaine, G. L. c. 94C, § 32E (*b*), and trafficking in twenty-eight to one hundred grams of heroin, G. L. c. 94C, § 32E (*c*), with each charge coupled with a corresponding school zone violation, G. L. c. 94C, § 32J. The firearm charges include possession of a large capacity firearm, G. L. c. 269, § 10 (*m*), possession of a firearm with the serial number defaced, G. L. c. 269, § 11C, possession of a firearm without a firearm identification card, G. L. c. 269, § 10 (*h*), and improper storage of a firearm, G. L. c. 140, § 131L.

[2]To protect confidentiality, the affidavit uses "it" in reference to the informant. We use the male pronoun for convenience. See *Commonwealth* v. *Shaughessy*, 455 Mass. 346, 348 n.4 (2009).

drugs in a "newer black car that appear[ed] to be very clean and shiny" and would direct him to a location somewhere on the south side of Brockton. The informant also told police that " 'Nana' sometimes states that she has to go home to retrieve the heroin prior to their meeting."

In March, 2008, police observed three controlled purchases of heroin by the informant from the defendant.[3] During each purchase, the informant placed a telephone call to the number he associated with Nana, responded to the arranged meeting location under "constant surveillance" by Brockton police officers, and purchased a quantity of heroin[4] from the defendant, who arrived in the same black 2005 Honda Accord automobile on each occasion. After the first two controlled purchases, police followed the defendant from the site of the transaction; she drove directly to 957 Warren Avenue. Before the third controlled purchase, officers stationed outside that address observed the same black Honda Accord, operated by the defendant, leave the driveway and head in the direction of the prearranged meeting location. Communication from the officers at the location of the purchase confirmed that the same car arrived moments later. After that purchase, the officers who remained at the residence observed the Honda Accord returning to the apartment "[w]ithin two minutes of the transaction taking place," and moments after its arrival, they "observed a light turn on in the third floor apartment."

Using their police computer records, the officers identified Nana as the defendant. The registered owner of the Honda Accord was listed as the defendant's mother, but the defendant's name was in the record of a motor vehicle stop initiated by the Brockton police department. The defendant's address in the records was listed as "957 Warren Ave Apt. #3 Brockton, Massachusetts."[5] Further investigation revealed a booking

---

[3]The procedure followed for each of these controlled purchases was consistent with that described by our case law. See *Commonwealth* v. *Desper*, 419 Mass. 163, 168 (1994), and cases cited.

[4]The field tests conducted on the substance received by the informant during each purchase produced a positive result for heroin.

[5]A search of the defendant's name in board of probation records also showed an address of "957 Warren Ave Brockton, Massachusetts," with no apartment number provided.

photograph and booking sheet for the defendant from April, 2004, which listed her alias as "Nana" and included a description of her that was "very similar" to that which the informant had provided. Based on this booking photograph, the informant later identified Nana as the defendant with "one hundred percent" certainty.

In addition, between the second and third controlled purchases, the officers conducted three days of sporadic surveillance at 957 Warren Avenue. Officers noticed that the Honda Accord remained parked in the driveway during this time period and that, while it was in the driveway, the lights in the third-floor apartment were on. During their surveillance, the officers did not see either the defendant or any other individual enter or leave the apartment.

On March 27, 2008, Mercurio investigated the computer access records of the electricity company providing service to the apartment. The electricity statement for 957 Warren Avenue, apartment no. 3, was in the defendant's name, and the accompanying telephone number was identical to the one that the informant had called during the three controlled purchases. The same day, two officers responded to 957 Warren Avenue for identification purposes, and spoke with a Hispanic female who identified herself as the defendant. She told the officers that she lived at that address.

The next day, March 28, 2008 (two days after the third controlled purchase), Mercurio filed an affidavit in support of a search warrant for 957 Warren Avenue, apartment no. 3, in Brockton.[6] The search warrant was issued, and the search conducted, on that same day. The search of the apartment revealed all the contraband (a firearm, heroin, and cocaine) that formed the basis of the charges against the defendant.[7]

The defendant moved, under both the Fourth Amendment to

---

[6]Mercurio also sought, and was issued, a search warrant for the vehicle used by the defendant in driving to the drug sales. That warrant is not part of the present appeal.

[7]Specifically, the search resulted in the seizure of 58.5 grams of suspected heroin; twenty-nine grams of suspected "crack" cocaine; three grams of suspected cocaine; a nine millimeter Luger handgun with an obliterated serial number; ammunition; $2,365 in cash; digital scales and plastic baggies; and paperwork connecting the defendant to that location, among other items.

the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, to suppress all items seized pursuant to execution of the warrant, arguing that "the affidavit failed to establish the requisite nexus between alleged drug distribution and the location of the search."[8] After a nonevidentiary hearing, a Superior Court judge allowed the defendant's motion. A single justice of this court granted the Commonwealth's application for leave to pursue an interlocutory appeal, and in an unpublished memorandum and order issued pursuant to its rule 1:28, the Appeals Court affirmed. *Commonwealth* v. *Tapia*, 79 Mass. App. Ct. 1113 (2011). We allowed the Commonwealth's motion for further appellate review.

2. *Discussion.* a. *Standard of review.* The facts contained in the affidavit, and the reasonable inferences therefrom, must "demonstrate probable cause to believe that evidence of the crime will be found in the place to be searched." *Commonwealth* v. *Jean-Charles*, 398 Mass. 752, 757 (1986), citing *Commonwealth* v. *Upton*, 394 Mass. 363, 370 (1985). Because this is a question of law, "we review the motion judge's probable cause determination de novo." *Commonwealth* v. *Long*, 454 Mass. 542, 555 (2009), citing *United States* v. *Kelley*, 482 F.3d 1047, 1051 (9th Cir. 2007), cert. denied, 552 U.S. 1104 (2008).

b. *Nexus.* Under both the Fourth Amendment and art. 14, a search warrant may issue only on a showing of probable cause. See *Commonwealth* v. *Valerio*, 449 Mass. 562, 566 (2007). This probable cause inquiry requires a "nexus between the items to be seized and the place to be searched." *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). When the place to be searched is a residence, "there must be specific information in the affidavit, and reasonable inferences a magistrate may draw, to provide 'a sufficient nexus between the defendant's drug-selling activity and [her] residence to establish

[8]The defendant also moved to suppress the firearm, ammunition, and money seized during the execution of the warrant because none of this evidence was requested by the police or supported by the affidavit. The defendant further argued that the police entry into her home was illegal because police did not knock and announce their presence. The motion judge resolved only the nexus issue and, because his review was confined to the information in the affidavit, held a nonevidentiary hearing; only the nexus issue was briefed and argued on appeal, both here and before the Appeals Court. We confine our review accordingly.

probable cause to search the residence.' " *Commonwealth* v. *Pina,* 453 Mass. 438, 440-441 (2009), quoting *Commonwealth* v. *O'Day,* 440 Mass. 296, 304 (2003). To satisfy this "nexus" requirement, and thus the probable cause standard, the affidavit "must provide a substantial basis for concluding that evidence connected to the crime will be found on the specified premises." *Commonwealth* v. *Donahue,* 430 Mass. 710, 712 (2000).

In our recent opinion in *Commonwealth* v. *Escalera,* 462 Mass. 636, 643 (2012), while acknowledging that "each case presents its own facts," we sought to provide guidance on the strictures of the "nexus" requirement. As pertinent here, in that case, after a full review of our prior holdings, we clarified that even "[a] single observation of a suspect leaving [her] home for a drug deal may also support an inference that drugs will be found in the home where it is coupled with other information." *Id.* at 644. Contrast *Commonwealth* v. *Pina, supra* at 442. In applying this rule, we concluded in that case that police observations of four controlled drug purchases, which confirmed details provided by a confidential informant, as well as additional police surveillance of a suspect's residence, established probable cause to search the residence. *Commonwealth* v. *Escalera, supra* at 645-646.

Given both the police observations of three drug purchases and the informant's tip, considered in light of *Commonwealth* v. *Escalera, supra,* there was a sufficient nexus between the defendant's drug-selling activities and her residence to establish probable cause to search that residence.

i. *Direct police observations.* The affidavit, on its face, presented sufficient evidence of a single instance where the police observed the defendant leave her home[9] to go to the location of a controlled purchase. When the officers saw the

---

[9]The information in the affidavit was undoubtedly sufficient to establish that the defendant lived in the apartment searched. Police surveillance, utility records, police department records, probation department records, and the defendant's own statements indicated that the third-floor apartment, the location searched, was her residence. It is therefore immaterial that police never saw the defendant enter or leave the door of apartment no. 3; it was enough that they observed her leaving from and returning to the apartment building. See *Commonwealth* v. *Warren,* 418 Mass. 86, 90 (1994); *Commonwealth* v. *Alcantara,* 53 Mass. App. Ct. 591, 593-594 (2002).

defendant leave her apartment building minutes after receiving the informant's telephone call and proceed to a controlled purchase, she either was already in possession of drugs or needed to proceed to a location to obtain them. *Commonwealth* v. *Escalera, supra* at 643-646. In any event, the evidence supports an inference that the drugs were at the defendant's home. *Id.* at 646 ("That evidence of the defendant's drug sales might also have been found [elsewhere] does not detract from the conclusion that there was probable cause to search the apartment").

That officers did not follow the defendant from the moment of her departure from her residence to her arrival at the location of the sale does not alter our conclusion. See *Commonwealth* v. *Luthy,* 69 Mass. App. Ct. 102, 107 (2007). "We agree with the Appeals Court that the transaction witnessed by the informant was susceptible of other interpretations [than the presence of drugs in the defendant's apartment, but] . . . the affidavit must only establish probable cause, not proof beyond a reasonable doubt." *Commonwealth* v. *Byfield,* 413 Mass. 426, 430-431 (1992).[10]

The additional observations of the officers, as well as the informant's tip, provided "other information" for a conclusion that the probable cause standard had been met. In addition to the aforementioned occasion on which the officers observed the defendant leave from her home in the direction of a controlled purchase, the officers twice followed the defendant from the site of a controlled purchase directly to her home. The defendant was the only person in the vehicle on both trips, and made no stops en route on either occasion.[11] Such evidence contributes

[10]The details of the affidavit provide a reasonable basis to infer that the defendant traveled directly from her home to the third controlled purchase. During the telephone call initiating the purchase, the defendant told the informant that she would meet him in five minutes, but did not leave her home until five to seven minutes later. The return trip from the controlled purchase took only two minutes, indicating that the defendant could quickly arrive at the prearranged location and thus wait until just minutes before the arranged meeting time to leave. See *Commonwealth* v. *Vynorius,* 369 Mass. 17, 19 n.4 (1975) (travel time between location searched and location of sale can support inference that drugs were stored at place searched).

[11]The defendant relies heavily on *Commonwealth* v. *Smith,* 57 Mass. App. Ct. 907 (2003) (*Smith*), where the Appeals Court held that the observation of

to a finding of probable cause.[12] See *Commonwealth* v. *Luthy*, *supra* at 104-106. Police observed the vehicle used in the controlled purchases parked at the apartment during all three surveillances.[13] See *id.* at 106-107. Also, visual surveillance revealed that the defendant left her residence after a telephone conversation with the informant during which they arranged the third purchase, permitting the inference that the defendant had, on at least that one occasion, conducted the drug delivery business directly from her home. See *id.* at 107. That the utility bill for the defendant's apartment listed the same telephone number as that used by the informant in arranging the controlled purchases further tied the telephone used in the drug sales to the location searched.[14] See *Commonwealth* v. *Rodriguez*, 75 Mass. App. Ct. 290, 300 (2009).[15]

    ii. *Informant's statement.* Finally, the statement provided by

three controlled purchases (before one the defendant was observed leaving his house, and after another the defendant was seen returning home) did not establish probable cause to search the defendant's home. But *Smith* has since been confined to its facts — according to the Appeals Court, *Smith* stands for the proposition that police observations of a defendant driving from home to a drug transaction on one occasion, without more, do not suffice to establish probable cause to search the home, see *Commonwealth* v. *Luthy*, 69 Mass. App. Ct. 102, 108-109 (2007), citing to our subsequent decision in *Commonwealth* v. *O'Day*, 440 Mass. 296, 304 (2003), a statement much like the rule in *Commonwealth* v. *Escalera*, 462 Mass. 636 (2012). In any event, there is considerably greater evidence of a nexus between the residence and the drug sales in this case than in the *Smith* case.

[12]The evidence also provided probable cause to believe that the police would find records of the defendant's drug distribution business, which the search warrant permitted the officers to seek. See *Commonwealth* v. *Turner*, 71 Mass. App. Ct. 665, 669 (2008); *Commonwealth* v. *Luthy*, *supra* at 107. The existence of probable cause to search for such records does not "alone support probable cause to search the home for drugs." *Commonwealth* v. *Escalera*, *supra* at 644 n.7.

[13]That police did not see suspicious activity during their three surveillances of the defendant's residence does not alter our conclusion as to probable cause. See *Commonwealth* v. *Hardy*, 63 Mass. App. Ct. 210, 213 (2005) ("The fact that police never observed short-term visitors or other evidence of drug transactions at the defendant's residence . . . is not fatal to probable cause, because the defendant's usual method of operation was to deliver drugs away from [her] apartment" [citations omitted]).

[14]The affidavit supporting the search warrant, to which we confine our review, did not specify whether the telephone used during the controlled purchases was a "landline" or a cellular telephone.

[15]We are not persuaded by the defendant's argument that the information in

the confidential informant, that the defendant "sometimes states that she has to go home to retrieve the heroin prior to their meeting," contributes to the probable cause determination. For statements of confidential informants to be used in the assessment of probable cause under art. 14, the Commonwealth must satisfy the *Aguilar-Spinelli* test. See *Spinelli* v. *United States*, 393 U.S. 410 (1969); *Aguilar* v. *Texas*, 378 U.S. 108 (1964). "[T]he Commonwealth must demonstrate some of the underlying circumstances from which (a) the informant gleaned his information (the 'basis of knowledge' test), and (b) the law enforcement officials could have concluded the informant was credible or reliable (the 'veracity' test)." *Commonwealth* v. *Cast*, 407 Mass. 891, 896 (1990).[16] Both prongs "must be separately considered and satisfied." *Commonwealth* v. *Parapar*, 404 Mass. 319, 321 (1989).

Here, the informant's basis of knowledge was apparent on the face of the affidavit: during previous transactions, he directly heard the defendant's statements concerning her need to go home to procure drugs for sale. Such direct receipt of information satisfies the basis of knowledge test. See *Commonwealth* v. *Allen*, 406 Mass. 575, 578 (1990), citing *Commonwealth* v. *Parapar*, *supra* at 322 ("First-hand receipt of information through personal observation satisfies the basis of knowledge prong of *Aguilar-Spinelli*").

the affidavit was stale. See *Commonwealth* v. *Cruz*, 430 Mass. 838, 843 (2000). The entire investigation occurred over eight days, with the third controlled purchase taking place only two days prior to the issuance and execution of the warrant. Such information is sufficient to establish a timely nexus to the defendant's apartment. See *Commonwealth* v. *Spano*, 414 Mass. 178, 184-185 (1993) (information timely where continuous drug operation was observed by police, up to within forty-eight hours of making of affidavit). Contrast *Commonwealth* v. *Reddington*, 395 Mass. 315, 322-323 (1985) (seven month old tip about once seeing drug transactions in defendant's house stale).

[16]This test has been abandoned under the Fourth Amendment to the United States Constitution, in favor of a less exacting "totality-of-the-circumstances" inquiry. *Illinois* v. *Gates*, 462 U.S. 213, 230-231 (1983). Under art. 14 of the Massachusetts Declaration of Rights, however, we continue to apply the *Aguilar-Spinelli* test to probable cause determinations in the assessment of an informant's tip. See *Commonwealth* v. *Upton*, 394 Mass. 363, 374 (1985). "We review the contested search in light of the more stringent standards of art. 14, with the understanding that, if these standards are met, so too are those of the Fourth Amendment." *Commonwealth* v. *Byfield*, 413 Mass. 426, 429 n.5 (1992).

As to the informant's veracity, this prong was satisfied by the police corroboration of the details provided by the informant through observation of three controlled drug purchases. "[A]n informant's detailed tip, plus independent police corroboration of those details, . . . can compensate for deficiencies in either or both prongs of the *Aguilar-Spinelli* standard, and thus satisfy the art. 14 probable cause requirement." *Commonwealth* v. *Cast, supra* at 896. The informant's description of the defendant's method of operation closely matched the practice corroborated by the police in three controlled purchases, thus establishing the informant's veracity. See *Commonwealth* v. *Escalera*, 462 Mass. 636, 645 n.8 (2012); *Commonwealth* v. *Blake*, 413 Mass. 823, 828-829 (1992). Contrast *Commonwealth* v. *Mubdi*, 456 Mass. 385, 397 (2010) (corroboration of only "innocent facts" described by informant do not contribute to veracity).

Because the informant satisfied the two prongs of *Aguilar-Spinelli* (basis of knowledge and veracity), the informant's statement that the defendant had described her need to go home to procure drugs for sale may properly be considered in assessing probable cause.

Accordingly, the information provided in the affidavit established a sufficient nexus to the defendant's apartment to support a finding of probable cause that contraband related to drug sales would be found in the location searched. The order allowing the defendant's motion to suppress the contraband is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*