GREEN, C.J.
*403 Following an investigation of suspected drug sales by Bryan Simpson, police obtained and executed a warrant to search the apartment in which they believed Simpson and the defendant, Jillian M. Silva, lived. The defendant was subsequently charged with possessing both class A and class B drugs with the intent to distribute and with conspiracy to violate the drug law. The defendant made a motion to suppress the evidence obtained in the search, and a judge of the District Court allowed the motion based on his conclusion that the information submitted in support of the search warrant application was inadequate to establish probable cause. After obtaining leave from a single justice of the Supreme Judicial Court, see Mass. R. Crim. P. 15 (a) (2), as appearing in 474 Mass. 1501 (2016), the Commonwealth appealed. We reverse.
Background. Our review of the sufficiency of an application for a search warrant "begins and ends with the 'four corners of the affidavit' " supporting it. Commonwealth v. O'Day, 440 Mass. 296, 297, 798 N.E.2d 275 (2003), quoting Commonwealth v. Villella, 39 Mass. App. Ct. 426, 428, 657 N.E.2d 237 (1995). We summarize the facts recited in the May 23, 2014, affidavit executed by Detective Daniel Amaral, an experienced New Bedford police detective assigned to a unit specializing in narcotics investigations.
During the week of May 4, 2014, Amaral was told by a confidential informant (CI) that an individual the CI knew as "Bryan" was engaged in a "crack" cocaine delivery service. The CI had been purchasing crack cocaine for over a month, and gave a physical description of Bryan. As described by the CI, the CI would call a telephone number to speak to Bryan, after which Bryan would designate a time and location to meet the CI to complete the purchase. The CI said that Bryan sometimes arrived at the purchase location in a gold-colored vehicle with a strap holding down the trunk, which was driven by a woman.
After consulting with other members of the narcotics investigation unit, Detective Amaral learned that another detective in that unit (Detective Sergeant Marc Blouin) had begun an investigation of an individual named Bryan Simpson residing at 175 Harwich Street, New Bedford, and had received five anonymous telephone calls on the narcotics anonymous tips line within the previous six months. The anonymous tipster described Simpson's use of a gold-colored vehicle with a strap holding down the trunk. Blouin informed Amaral that he had traveled to 175 Harwich Street and observed Simpson and a woman leave the building at that address and get into a gold-colored vehicle with a strap holding down the trunk. After checking the license plate of the vehicle, Blouin learned that it was registered to the defendant's mother. After searching police department records, Amaral discovered an incident report concerning a domestic disturbance at 175 Harwich Street between Simpson and the defendant on July 7, 2013, in which the defendant reported that she had had a verbal argument with Simpson, whom she described as her boy friend of four years.[1]
Amaral then arranged, on three separate occasions between May 4 and May 23, 2014, to have the CI participate in controlled purchases of crack cocaine from Simpson. On two occasions, shortly after *404 the CI placed a call to Bryan, detectives watched Simpson and a woman leave by the front door of 175 Harwich Street, enter a vehicle parked on the street, and drive directly to the designated location. There, the CI briefly interacted with Simpson before the two separated. After both encounters, the CI provided police with a substance that was later confirmed to be crack cocaine. After the second meeting, Simpson and the woman returned immediately to 175 Harwich Street and entered through the front door. On the occasion of the third controlled purchase, Simpson was observed leaving 175 Harwich Road alone, entering a vehicle in the rear of the building, and driving to the designated location, where he sold crack cocaine to the CI and then drove in a direction away from Harwich Road. On at least two other occasions during this period, police observed Simpson leave his residence and engage briefly with individuals other than the CI at various locations in what appeared to be drug transactions.
Detectives also observed Simpson and a woman check the mailbox for an apartment on the east side of 175 Harwich Street before using keys to enter through the front door of the building.
Amaral next determined that the utilities for the third-floor apartment on the east side of 175 Harwich Street had been established in the name of Michelle Silva on September 17, 2012, listing a particular telephone number for the customer. Amaral called the telephone number and, when a woman answered, asked to speak to "Jillian Silva." The woman on the telephone said "speaking," whereupon Amaral terminated the call.
In his application, Amaral requested a "no-knock" warrant, based (among other things) on concern that entrance through the locked front door of the apartment building before proceeding to the third-floor apartment unit would present heightened risk that evidence could be disposed of or destroyed before police reached the apartment unit itself.[2]
Discussion. "The Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights 'require a magistrate to determine that probable cause exists before issuing a search warrant.' " Commonwealth v. Escalera, 462 Mass. 636, 641-642, 970 N.E.2d 319 (2012), quoting Commonwealth v. Byfield, 413 Mass. 426, 428, 597 N.E.2d 421 (1992). "To establish probable cause, the facts contained in the warrant affidavit, and the reasonable inferences drawn from them, must be sufficient for the issuing judge to conclude that the police seek items related to criminal activity and that the items described 'reasonably may be expected to be located in the place to be searched at the time the warrant issues' (citation omitted). Commonwealth v. Walker, 438 Mass. 246, 249, 780 N.E.2d 26 (2002). The question whether there was probable cause to issue the search warrant is a question of law that we review de novo, see Commonwealth v. Tapia, 463 Mass. 721, 725, 978 N.E.2d 534 (2012), in a commonsense and realistic manner." Commonwealth v. Perkins, 478 Mass. 97, 102, 82 N.E.3d 1024 (2017). In conducting our review, we read the warrant affidavit as a whole, without overly parsing or severing it, or subjecting it to "hypercritical analysis" (citation omitted). Commonwealth v. Donahue, 430 Mass. 710, 712, 723 N.E.2d 25 (2000). See Commonwealth v. Anthony, 451 Mass. 59, 68, 883 N.E.2d 918 (2008)
*405 ("In dealing with probable cause ... we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act" [citation omitted] ).
In the present case, the information set forth in Detective Amaral's affidavit furnished probable cause to believe that drugs and other implements of the drug trade would be found in the third-floor apartment on the east side of 175 Harwich Street. Specifically, police observations of Simpson's departure from the building at that address and travel directly to the location of three controlled purchases established a nexus between the building and the drug-distribution operation in which Simpson was engaged. See Escalera, 462 Mass. at 645-646, 970 N.E.2d 319 ; Commonwealth v. Luthy, 69 Mass. App. Ct. 102, 106-109, 866 N.E.2d 930 (2007).
The defendant's contention that the affidavit failed to provide an adequate connection to the particular apartment unit within the building is unavailing. Several factors in the affidavit furnished probable ties between the third-floor apartment on the east side of the building and Simpson. To begin with, a woman who identified herself as Jillian Silva answered the telephone when Amaral called the number registered to the account for utilities for that apartment. Silva in turn was connected to Simpson through a long-term relationship as recently as ten months before the warrant application was executed, and Simpson, accompanied by a woman, was observed checking a mailbox for an apartment on the east side of the building before entering the building by use of a key to the building's front door. The vehicle in which Simpson sometimes traveled to the location of drug sales, including on the occasion of two controlled purchases, was registered to the defendant's mother.
To be sure, it is possible that Simpson and the defendant terminated their long-term relationship during the ten months following the verbal argument described in the police incident report of July, 2013, that a woman other than the defendant used the defendant's mother's vehicle to drive Simpson to and from the drug sales, and that someone other than the defendant falsely identified herself as the defendant after answering the telephone associated with the utilities supplied to the apartment unit. However, the magistrate is permitted to draw reasonable inferences in evaluating the facts submitted in an affidavit in support of a search warrant, and "[a]n inference drawn from circumstantial evidence 'need only be reasonable and possible; it need not be necessary or inescapable.' " Luthy, 69 Mass. App. Ct. at 106, 866 N.E.2d 930, quoting Commonwealth v. Gilbert, 423 Mass. 863, 868, 673 N.E.2d 46 (1996).[3]
We likewise conclude that the magistrate was justified in authorizing a no-knock entry by police when executing the warrant. "The requirement that police knock and announce their presence is based on common law principles aimed at protecting privacy, decreasing the potential for violence and preventing unnecessary damage."
*406 Commonwealth v. Perez, 87 Mass. App. Ct. 278, 281-282, 28 N.E.3d 504 (2015). However, "competing interests will justify abrogating the requirement in individual instances. These are, principally, avoiding the destruction of evidence and increasing officer safety." Id. at 282, 28 N.E.3d 504. In the present case, the affidavit explained in some detail the basis for the detective's concern that the occupants of the apartment would destroy evidence unless the officers executing the warrant were allowed to dispense with the knock-and-announce requirement. In particular, the location of the apartment on the third floor, with a locked entrance door to the building at the ground floor, furnished heightened concern for the possible destruction of evidence. See Commonwealth v. Ortega, 441 Mass. 170, 177-178, 804 N.E.2d 345 (2004) ; Commonwealth v. Jimenez, 438 Mass. 213, 221, 780 N.E.2d 2 (2002).[4] ,[5]
Conclusion. The order allowing the defendant's motion to suppress evidence is reversed.
So ordered.

Amaral's review of board of probation records also disclosed that Simpson had been convicted of possession of class B narcotics and possession of class B narcotics with intent to distribute, and had been arraigned on such charges as assault and battery, armed robbery by means of a knife, and assault with intent to rob.

Amaral also cited Simpson's "propensity for violence" as a rationale for the no-knock designation, see note 1, supra, and cited the proximity of Harwich Street to Acushnet Avenue, a well-traveled street, to suggest that a "stealth approach" would be difficult.

We note that, in his memorandum of decision allowing the defendant's motion to suppress, the motion judge relied in part on a conclusion that the affidavit did not supply sufficient indicia of the CI's reliability to satisfy the Aguilar-Spinelli test. See Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Our assessment of probable cause established by the facts set forth in the warrant affidavit does not rest to any material extent on the reliability of any assertion by the CI; instead the facts supporting probable cause rest on information resulting from police investigation or observations following the initial tip the police received from the CI.

We note that "the mere fact that drugs are involved is insufficient to justify a no-knock warrant." Ortega, 441 Mass. at 176, 804 N.E.2d 345. See Commonwealth v. Scalise, 387 Mass. 413, 421, 439 N.E.2d 818 (1982) (declining to adopt "blanket rule" excusing requirement to knock and announce "whenever the objects named in the search warrant are by their nature amenable to ready disposal or destruction").

We also note that, because the defendant did not place at issue any claim that the circumstances police encountered when they executed the warrant compelled a reappraisal of the need to enter without announcing their presence, and the motion judge accordingly did not conduct an evidentiary hearing on the question, there is no evidence to suggest that the circumstances justifying the no-knock warrant had changed. See Scalise, 387 Mass. at 421 n.7, 439 N.E.2d 818. In any event, the requirement to conduct a reappraisal of the circumstances "is not a formalistic exercise mandated in all circumstances -- it is a recognition that the provisions of a warrant are conditioned on the continued existence of the sworn facts justifying the abrogation of constitutional rights until the warrant is executed." Commonwealth v. Chamberlin, 86 Mass. App. Ct. 705, 710, 20 N.E.3d 954 (2014). Here, the basis for abrogation of the knock-and-announce requirement was principally the physical location of the third-floor apartment, and the locked ground-level entry door to the building -- both factors that are unlikely to change.