SUPERIOR COURT 
 
 COMMONWEALTH vs. MICHAEL ANDREA

 
 Docket:
 2181CR0267
 
 
 Dates:
 July 15, 2022
 
 
 Present:
 David A. Deakin Associate Justice
 
 
 County:
 MIDDLESEX, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT’S MOTION TO SUPPRESS EVIDENCE
 
 

             This indictment charges the defendant, Michael Andrea, with the rape of A.W., a female friend, on February 7, 2020, in his apartment in Holliston. In essence, the indictment alleges that A.W. agreed to take a nap with Andrea in his bed and awoke to find him penetrating her with his penis. After A.W. reported the alleged assault to the Hopkinton Police Department, officers obtained a warrant to search Andrea’s home for evidence relevant to the accusation. The search warrant that was issued authorized the police to enter Andrea’s home without knocking and announcing their presence (a “no-knock warrant”). Andrea brought a Motion to Suppress Evidence (“Motion,” Paper No. 11), contending that the information in the affidavit in support of the application for the search warrant was insufficient to justify the issuance of a no-knock warrant. The Commonwealth does not disagree. It contends, however, that, because the police actually knocked several times on Andrea’s door and announced themselves as police officers with a search warrant, the warrant’s erroneous abrogation of the knock-and-announce requirement does not justify suppression of the evidence recovered. Andrea concedes, in turn, that, if I credit the officers’ testimony that the Hopkinton police officers knocked and announced themselves, then the issuance of a no-knock warrant, standing alone, does not support
 
                                                            -1
 
suppression. Because, after hearing, I credit the officers’ testimony that they knocked and announced themselves before entering Andrea’s home, the Motion is DENIED.
BACKGROUND[1]
            On February 7, 2020, A.W. went to the Holliston Police Department to report a rape. She told officers there that she had spent the previous evening with Andrea, a friend of a friend. They had met once four or five months before and had no romantic relationship. At approximately 9:30 p.m., Andrea and A.W. met at the Buffalo Wild Wings restaurant in Saugus. They spent some time there, and then Andrea proposed that they leave the restaurant and go to his apartment to watch movies. A.W. agreed, and they left, arriving at Andrea’s apartment in Holliston at about 1:30 a.m.
            A.W. and Andrea watched comedy films until about 4:00 a.m. Twice while they were watching movies, Andrea allegedly kissed A.W. She expressed her displeasure with these advances by moving to the far end of the couch on which they were sitting. At 4:00 a.m., Andrea invited A.W. to spend the night at his apartment. She replied that she would “take a nap” there and then get a ride home from a ride-sharing service later in the morning. Andrea gave A.W. a pair of pajama pants to wear; A.W. kept her own top on. The two then went to sleep in Andrea’s bed.
            At approximately 6:30 a.m., A.W. awoke to Andrea on top of her. She was on her stomach. He was penetrating her with his penis, although A.W. was uncertain whether he was penetrating her genitals or anus. Eventually, Andrea grunted and got off A.W. She went to the bathroom to clean herself and change back into her own pants. She left behind the pajama pants
 
-------------------------------------
 
[1] The facts in this section are taken from the Affidavit of Officer David Charette in Support of an Application for a Search Warrant, see Exhibit 1, and the testimony of Officer Charette and Sergeant Todd Hagan, both of the Holliston Police Department, which I credit in full.
 
                                                            -2-
 
that Andrea had loaned her, as well as the underwear that she had worn the night before. A.W. left Andrea’s apartment in haste, afraid that he intended to follow her.
            Shortly after she left, A.W. called a friend and told her what had happened. Her friend told A.W. that what she was describing was rape. A.W.’s friend picked her up and brought her to the Holliston Police Station, where she made her report.
            Holliston Police officials met to discuss next steps. Apparently taking the lead was Detective Cira (Ryan) McGuire. Holliston Police officials discussed their investigation plan with an assistant district attorney from the office of the District Attorney for the Middlesex District (“District Attorney’s Office”). The assistant district attorney agreed with the police officials’ plan to execute a search warrant at Andrea’s apartment at 927 Washington Street, Apartment 2, in Holliston.
            Working in consultation with Detective McGuire, Officer David Charette prepared an Application for Search Warrant, pursuant to G. L. c. 276, §§ 1-7, and a supporting affidavit. In his original application, Officer Charette did not seek authorization to dispense with the requirement that officers knock and announce themselves before entering the apartment. Officer Charette presented the application and supporting affidavit to Clerk Magistrate Brian J. Kearney at the Framingham District Court on February 7, 2020, the day of A.W.’s report. Officer Charette testified, and I credit, that there ensued some discussion between Clerk Magistrate Kearney and himself about Andrea’s license to carry a firearm. Apparently hearing that Andrea had a license to carry a firearm issued by the Holliston Police Department, Clerk Magistrate Kearney suggested to Officer Charette that he apply for a no-knock warrant. Officer Charette did so, adding to the end of his affidavit, “subject has LTC [license to carry] through town of Holliston.”
 
                                                            -3-
 
Based on the revised application and affidavit, Clerk Magistrate Kearney issued a search warrant that included authorization to dispense with the knock-and-announce requirement.
            After the issuance of the search warrant, several officers of the Holliston Police Department met to plan its execution. Sergeant Todd Hagan was chosen to be the point person, assigned to be at the door of the apartment when the warrant was executed. Sergeant Hagan testified, and I credit, that, when he learned at the meeting that the warrant dispensed with the knock-and-announce requirement, he mentioned to the others that he would be required by law to conduct “a doorway reappraisal” before entering without knocking and announcing.
            That evening, the team went to Andrea’s apartment building to execute the search warrant. When the team was in place, Hagan appraised the situation. He noted that there was no sound coming from within the apartment. From this, he concluded that there was no evidence that anyone inside was attempting to destroy evidence. Sergeant Hagan was also reassured for his – and the other officers’ – safety by the presence of a large number of officers on the scene. He testified that, although Holliston Police at the time had smaller-than-usual shifts, the team had been able to secure support from neighboring police departments. The result was that he felt confident that the team had sufficient support to knock and announce safely.
            Sergeant Hagan testified, and I credit, that he told the officers next to him at the door that he intended to knock and announce their presence. He then knocked, loudly, several times without any response from inside. Finally, receiving no response to the several knocks – each separated from the last by several seconds – Hagan called out, again loudly, that they were from the Holliston Police Department and that they had a warrant to search the premises. The officers entered and seized items of apparent relevance.
 
                                                            -4-
 
            The Grand Jury for Middlesex County returned the one-count indictment on August 23, 2019, and Andrea was arraigned on September 17, 2019. Andrea filed this Motion on January 6, 2021. On June 28, 2021, the court (Pierce, J.) held a hearing on Andrea’s Motion to Dismiss (Paper No. 16), which was denied. A hearing on Andrea’s Motion to Suppress the Identification of the Defendant (Paper No. 19) was held on May 26, 2022, and denied by the Court (Budreau, J.). I held a hearing on the Motion on July 11, 2022, and took it under advisement.
ANALYSIS
            As narrowed by the parties’ positions and my evaluation of the witness testimony, the Motion presents a discrete question of law – whether a warrant, the execution of which is preceded by knocking and a proper police announcement of their presence is invalidated by its having been erroneously issued as a no-knock warrant. In this Motion, Andrea does not contest that the information in the search warrant affidavit was sufficient to justify the search of his apartment. Likewise, the Commonwealth does not dispute that the information in the affidavit was insufficient to justify the no-knock provision in the warrant. Finally, I credit Officer Charette’s testimony, and that of Sgt. Hagan, that Sgt. Hagan in fact knocked several times and announced that they were police officers with a warrant to search Andrea’s home. Thus, the only question remaining is whether the presence in the warrant of the improper no-knock authorization invalidates it. I conclude that it does not.
            Generally, police officers executing a search warrant must knock and announce their presence and purpose. See Commonwealth v. Eller, 66 Mass. App. Ct. 564, 571 (2006), citing Commonwealth v. Cundriff, 382 Mass. 137, 146 (1980), cert. denied, 451 U.S. 973 (1981). A magistrate may set aside the knock-and-announce requirement, however, if “the search warrant affidavit contains sufficient information to establish ‘probable cause to believe that the officers’
 
                                                            -5-
 
safety would be endangered or the evidence sought would be destroyed.’” Id., quoting Commonwealth v. Ortega, 441 Mass. 170, 176 (2004). Even if police obtain a no-knock warrant, they are required to “make a ‘threshold reappraisal’ of the actual circumstances they face before they may disregard the [knock-and-announce] requirement.” Commonwealth v. Jimenez, 438 Mass. 213, 217 (2002), citing, inter alia, Commonwealth v. Scalise, 387 Mass. 413, 421 (1982). Violation of the knock-and-announce rule does not automatically result in suppression. See Commonwealth v. Perez, 87 Mass. App. Ct. 278, 283 (2015). Rather, in deciding whether suppression is warranted as a result of a violation, a court must assess “‘the degree to which the violation undermined the . . . governing rule of law,’ and . . . the extent to which exclusion will serve as a deterrent in the future.” Id., quoting Commonwealth v. Gomes, 408 Mass. 43, 46 (1990).[2]
            The Appeals Court has addressed the specific issue presented in this case, albeit in dicta. In Eller, the Appeals Court held that the information in the affidavit in support of the application for the search warrant established the predicates for issuance of a no-knock warrant. The Eller Court went on to observe, in dicta, that “[e]ven if we were to conclude that none of the circumstances described in the affidavit, or encountered by the police upon the execution of the warrant, justified a no-knock entry, the police entry here does not entitle the defendant to the suppression of the evidence.” 66 Mass. App. Ct. at 572-573, citing Commonwealth v. Gomes, 408 Mass. 43, 46 (1990) (violation of knock-and-announce rule does not automatically result in suppression of evidence seized). This is because the Eller Court concluded that, “[b]y
 
-------------------------------------
 
[2] The Federal Rule is different. Under Federal precedent, suppression is not a remedy for a violation of the Federal knock-and-announce rule, which is codified in 18 U.S.C. § 3109. See United States v. Garcia-Hernandez, 659 F.3d 108, 111-112 (1st Cir. 2011), citing Hudson v. Michigan, 547 U.S. 586, 591 (2006).
 
                                                            -6-
 
announcing their presence and purpose outside of the motel room, but while in view of the defendant, the police satisfied the requirement that they knock and announce their presence before executing a search warrant.”[3] Id. at 573.
            The dicta in Eller thus persuades me that, in a case like this one in which a magistrate issues a no-knock warrant in error but the police knock and announce their presence, there is no basis to invalidate the warrant or, therefore, to suppress evidence seized under its authority. Andrea’s counsel conceded this point at the hearing on the Motion. The concession strikes me as appropriate in light of the dicta in Eller and the general rule that the inclusion of improper information in an application for a search warrant will not invalidate the warrant unless “the sanitized affidavit [does] . . . not support a finding of probable cause.” Commonwealth v. Valdez, 402 Mass. 65, 69-70 (1988), citing Franks v. Delaware, 438 U.S. 154, 172 (1978) (no hearing on affiant’s veracity required if, setting aside offending material, search warrant establishes probable cause). Additionally, the error in issuing a no-knock warrant in this case had no effect on Andrea’s rights as the officers serving the warrant – having conducted the requisite reappraisal of the provision on the threshold of Andrea’s apartment – chose not to invoke it and, instead, knocked repeatedly and announce their identities and purpose. Under these circumstances, the erroneous issuance of the no-knock warrant did not undermine the governing rule of law, and it therefore would serve no deterrent purpose to suppress the evidence seized pursuant to the warrant.
 
-------------------------------------
 
[3] In Commonwealth v. Eller, 66 Mass. App. Ct. 564, 573 (2006), the Appeals Court noted that, “even if the method of entry did not adhere perfectly to the knock and announce requirement, it was sufficient to satisfy its objectives.” I find that, perhaps unlike in Eller, in this case, the police actions in this case fully complied with the requirement that officers knock and announce before entry.
 
                                                            -7-
 
CONCLUSION AND ORDER
            For the foregoing reasons, the defendant’s Motion to Suppress Evidence is DENIED.