Cordy, J.
In this case we consider whether, where there was probable cause for the issuance of a warrant to search an Apple *497 iPhone,[1] the search and seizure of certain photograph files conducted in reliance thereon was reasonable.
The warrant authorized a search of the defendant’s iPhone for evidence of communications that would link him and another suspect to a shooting that occurred in the Hyde Park section of Boston. The search tool used to extract data from the iPhone was programmed to extract not only contact lists and text messages (texts), but also photographs. Among the photographs extracted and examined by the police were photographs depicting the defendant holding a gun and dressed in the same color jacket described by witnesses to the shooting.
We conclude that where there was probable cause that evidence of communications relating to and linking the defendant to the crimes under investigation would be found in the electronic files on the iPhone, and because such communications can be conveyed or stored in photographic form, a search of the photograph files was reasonable. Finally, we conclude that the photographs in question were properly seized as evidence linking the defendant to the crimes under investigation.
Background. On July 3, 2011, at approximately 7 p.m., Detective Richard Walker and other Boston police officers responded to reports of a shooting at 74 Pierce Street in Hyde Park. On arrival, the responding officers found Michael Lerouge with gunshot wounds to his back. The police found a black Glock, model 23, .40 caliber firearm in the middle of the roadway between 73 and 74 Pierce Street. Witnesses told the police that Lerouge and another person had shot at one another and that Lerouge had discarded the firearm under a parked motor vehicle, after which it slid further into the road. The police were also informed that the other shooter, described as wearing a green-colored shirt or jacket with writing on it, had run down Pierce Street toward Walter Street, dropping a firearm in the process. Witnesses stated that this man stopped, retrieved the dropped firearm, and then continued to run in the direction of 86 Pierce Street. The defendant was subsequently found on the left side of 86 Pierce Street, wearing a green jacket with emblems and suffering from gunshot wounds to his left leg.
*498 When the police found the defendant, he was with Jamal Boucicault, who was subsequently interviewed at the police station. Boucicault told the police that he was visiting the defendant in an apartment at 86 Pierce Street when the defendant received a telephone call. The defendant began arguing with the caller and subsequently left the apartment. A short time later, Boucicault heard what sounded like gunshots and went outside to find the defendant on the left side of the house at 86 Pierce Street. The defendant handed Boucicault a gun and asked him to hide it, and he then did so in the apartment at 86 Pierce Street.
The defendant’s brother, Bricknell Dórelas, also spoke with the police after the incident. He stated that earlier in the evening he had received a telephone call from the defendant, in which the defendant stated that he “was receiving threatening [telephone calls and threatening text messages on his [telephone.” Bricknell did not know the identity of the person who was threatening the defendant. The police also spoke with a cousin of the defendant, Ohuinel Normil, who said the defendant “had been getting a lot of telephone threats because he owes money to people.” Normil did not know the identity of these people.
The owner of 86 Pierce Street told the police that he rented the rear apartment on the second floor of the building to the defendant, and that the defendant was the apartment’s sole occupant. Thereafter, the police applied for, received, and executed a search warrant for the defendant’s apartment. Pursuant to that warrant, the police seized a gun and an iPhone.[2]
Based on the information above, Walker believed that the defendant’s iPhone contained information linking both the defendant and Lerouge to the crimes of assault and battery by means of a dangerous weapon (firearm) and assault with intent to murder that were under investigation. Accordingly, he applied for a warrant to search the iPhone. In his affidavit, which was attached to his application for the warrant, Walker set out the substance of the investigative interviews and concluded by stating: “Based on the above facts ... I have probable cause to believe [the defendant’s] cell phone contains valuable information that will link the victim/suspect ([the defendant]) and sus *499 pect/victim (Lerouge) to the crime.” Walker received and executed a warrant to search the defendant’s iPhone for the following:
“Subscriber’s name and telephone number, contact list, address book, calendar, date book entries, group list, speed dial list, phone configuration information and settings, incoming and outgoing draft sent, deleted text messages, saved, opened, unopened draft sent and deleted electronic mail messages, mobile instant message chat logs and contact information mobile Internet browser and saved and deleted photographs on an Apple iPhone, silver and black, green soft rubber case. Additionally, information from the networks and carriers such as subscribers information, call history information, call history containing use times and numbers dialed, called, received and missed.”[3]
Among other items, the search resulted in the discovery and seizure of photographs of the defendant wearing a green jacket and holding a gun.[4] The date the photographs were taken, stored, or received is not apparent in the record on the motion to suppress, and the defendant does not claim that the photographs were taken, stored, or received at times remote from the shooting.
Procedural history. In September, 2011, the defendant was charged by a Suffolk County grand jury with possession of a firearm without a license, in violation of G. L. c. 269, § 10 (a); possession of ammunition without a firearm identification card, in violation of G. L. c. 269, § 10 (fi); carrying a loaded firearm, in violation of G. L. c. 269, § 10 (n); and possession of a large capacity feeding device without a license, in violation of G. L. *500 c. 269, § 10 (m).[5]
The defendant filed a number of motions to suppress evidence, only one of which is relevant on appeal. In March, 2013, he filed a motion to suppress the photographs[6] obtained from the search of his iPhone, which was denied after an evidentiary hearing.[7] In his arguments to the motion judge, the defendant conceded that the search warrant affidavit provided probable cause to search the iPhone for text messages and photographs attached to text messages relevant to the shooting under investigation, but that it was unreasonable to search the photograph files on his iPhone for such evidence. The motion judge held, in relevant part, that it was appropriate for the police to search the files on the defendant’s iPhone that contained his photographs because the affidavit “furnished probable cause to conduct an electronic search of [his] cell phone” and because threats can be communicated by way of photographs and stored in the iPhone’s photograph file. The defendant filed a timely notice of appeal. In July, 2013, a single justice of this court allowed the defendant’s petition for leave to file an interlocutory appeal and ordered the appeal to be filed in the Appeals Court. In December, 2014, this court granted the defendant’s application for direct appellate review.
Discussion. On appeal, the defendant argues that the motion to suppress photographs was wrongly denied, as there was not probable cause to search his iPhone’s photograph file for evidence linking him to Lerouge or the shooting.[8]
When considering the sufficiency of a search warrant application, our review “begins and ends with the four corners of the *501 affidavit” (quotation and citations omitted).[9] Commonwealth v. Cavitt, 460 Mass. 617, 626 (2011). “In determining whether an affidavit justifies a finding of probable cause, the affidavit is considered as a whole and in a commonsense and realistic fashion . . . .” Id. The affidavit should not be “parsed, severed, and subjected to hypercritical analysis” (quotation and citation omitted). Commonwealth v. Donahue, 430 Mass. 710, 712 (2000). “All reasonable inferences which may be drawn from the information in the affidavit may also be considered as to whether probable cause has been established.” Id. Importantly, “[w]e give considerable deference to a magistrate’s determination of probable cause.” Commonwealth v. McDermott, 448 Mass. 750, 767, cert. denied, 552 U.S. 910 (2007).
The Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights “both require a magistrate to determine that probable cause exists before issuing a search warrant” (quotation and citation omitted). Cavitt, 460 Mass. at 626. “[Pjrobable cause requires a substantial basis . . . for concluding that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues” (quotations and citations omitted). Commonwealth v. Kaupp, 453 Mass. 102, 110 (2009). See McDermott, 448 Mass. at 768 (probable cause to search residence where “reasonably likely that the items specified in the affidavit could be found there” [quotation and citations omitted]).[10]
In the physical world, police need not particularize a warrant application to search a property beyond providing a specific address, in part because it would be unrealistic to expect them to be equipped, beforehand, to identify which specific room, closet, drawer, or container within a home will contain the objects of their search. Rather, “[a] lawful search of fixed premises generally extends to the entire area in which the object of the search may be found” (emphasis added). See United States v. Ross, 456 U.S. 798, 820 (1982).
*502 However, in the virtual world, it is not enough to simply permit a search to extend anywhere the targeted electronic objects possibly could be found, as data possibly could be found anywhere within an electronic device. Thus, what might have been an appropriate limitation in the physical world becomes a limitation without consequence in the virtual one.[11]
Nevertheless, much like a home, such devices can still appropriately be searched when there is probable cause to believe they contain particularized evidence. See McDermott, 448 Mass. at 770-772. However, given the properties that render an iPhone distinct from the closed container's regularly seen in the physical world, a search of its many files must be done with special care and satisfy a more narrow and demanding standard. See Hawkins v. State, 290 Ga. 785, 786-787 (2012) (cellular telephone is “roughly analogous” to container, but large volume of information contained in cellular telephone “has substantial import as to the scope of the permitted search,” which must be done with “great care and caution”). “Officers must be clear as to what it is they are seeking on the [iPhone] and conduct the search in a way that avoids searching files of types not identified in the warrant.” United States v. Walser, 275 F.3d 981, 986 (10th Cir. 2001), cert. denied, 535 U.S. 1069 (2002). “[A] computer search ‘may be as extensive as reasonably required to locate the items described in the warrant’ ” based on probable cause (emphasis added). United States v. Grimmett, 439 F.3d 1263, 1270 (10th Cir. 2006), quoting United States v. Wuagneux, 683 F.2d 1343, 1352 (11th Cir. 1982), *503 cert. denied, 464 U.S. 814 (1983).
In the instant case, the police presented evidence in the warrant affidavit that included the statements of witnesses to the effect that the defendant had been receiving threatening communications on his iPhone with respect to money he owed to “people,” and indeed had been using his iPhone while arguing with an individual immediately prior to the shooting. This was admittedly sufficient to establish probable cause to believe that the defendant’s iPhone likely contained evidence of multiple contentious communications between himself and other persons in the days leading up to the shooting, that is, evidence of communications both received as well as initiated and sent by the defendant that would link him and others to that shooting. The warrant, in turn, included authorization to search for such evidence not only in the iPhone’s call history and text message files, but also in its photograph files.
The defendant contends, however, that the police had probable cause only to search his telephone call and text files, and not his photograph file. We disagree. Communications can come in many forms including photographic, which the defendant freely admits. So long as such evidence may reasonably be found in the file containing the defendant’s photographs, that file may be searched.[12],[13] We agree with the motion judge that the evidence sought, for which there was probable cause, might reasonably have been found in the photograph file. Therefore, a search for such evidence in that file was neither outside the scope of the warrant nor unreasonable.
*504 Nevertheless, the defendant contends that a search using the Universal Forensic Extraction Device (UFED) could easily have been conducted for communications, including photographic communications, without reviewing his photograph file.[14] As explained by the defense expert at the evidentiary hearing, the UFED is capable of performing targeted searches of this type, distinguishing between areas of the iPhone from which to extract data — such as “call logs,” “phonebooks,” short message service,[15] “pictures,” and “videos” — and retrieving photographs that may have been attached to text messages.
While it may be possible for a forensic examiner to retrieve some photographic evidence through searches of files other than the photograph file, that does not make such a retrieval method constitutionally required where such photographic evidence would also reasonably be found in the iPhone’s photograph file. In addition, the communications at issue may have occurred over an extended period of time leading up to the shooting, and where texts and their attachments may be overwritten by new data, the saved photographic attachment may only be found in the iPhone’s photograph file. Accordingly, in determining the nexus between the items sought and the place to be searched, it was reasonable here to infer that the targeted evidence might not exist exclusively in the text and call log folders. See Commonwealth v. O’Day, 440 Mass. 296, 302 (2003) (magistrate may make probable cause determination in part based on “normal inferences as to where a criminal would be likely to hide [evidence of the crime]” [citation omitted]). The affidavit in question contained enough information from which the magistrate and the forensic examiners could conclude that the evidence sought might reasonably be located in the photograph file. See McDermott, 448 Mass. at 767.
The dissent postulates that even if the warrant did authorize the search and seizure of photographs, such authorization extended, at most, to photographs depicting threats. Post at 509. However, *505 there is no conceivable way for the police to detect whether a picture is of a threatening nature without opening it first. See United States v. Burgess, 576 F.3d 1078, 1094 (10th Cir.), cert. denied, 558 U.S. 1097 (2009). Once the photographs in question were viewed, their evidentiary relevance linking the defendant (holding a gun and wearing a jacket similar to the one worn by the shooter) to the specific crimes under investigation was apparent. The photographs also came within the scope and subject matter of the warrant, as one or more of them could well have been sent as a threatening communication to the person or persons who had apparently been threatening him over several days.[16]
The motion to suppress was properly denied.[17]

So ordered.

An iPhone, which is manufactured by Apple Inc., is a type of “smart” cellular telephone (smartphone) that, in addition to making telephone calls, can transmit text messages (texts), perform the functions of both a camera and a video recorder, enable the operation of various applications, and connect to the Internet.

The defendant told the police that the iPhone belonged to him. This statement was subsequently suppressed, but the motion judge concluded that there remained “sufficient information” for the magistrate to conclude that the iPhone belonged to the defendant, as he was the sole occupant of the apartment on Pierce Street in which the iPhone was found.

The warrant is awkwardly written, conflating at least in part the items to be searched for and the places to be searched. We agree with the dissent that as written the warrant and the warrant application are overly broad. But considered in conjunction with the affidavit incorporated therein, a commonsense reading shows that the warrant authorized a search of various types of files for evidence of communications that would link the defendant and another person to the shooting. This is the reading that the motion judge appears to have given the warrant.

The complete inventory return lists the following taken as a result of the warrant: “Phone Examination Report Properties” (which includes texts), “Phone Examination Report Index,” “Phone Contacts,” “Phone Incoming Call List,” “Phone Outgoing Call List,” “Phone Missed Call List,” “Images,” and “Video.”

Although the defendant was initially charged with offenses related to the shooting, the Commonwealth’s investigation determined that the defendant acted in self-defense when he allegedly fired a gun. The fact that subsequent investigation by the police indicated that the defendant was acting in self-defense in the shooting is irrelevant to the validity and scope of the search.

The motion also sought to suppress video recordings obtained during the search. The Commonwealth represented that it would not be using any video recordings recovered from the iPhone, and therefore the defendant has not made any arguments relating to those recordings on appeal. We offer no opinion as to whether video recordings were properly within the scope of the search authorized by the warrant.

The only witness to testify at the evidentiary hearing was Joseph Nicholls, a computer forensics examiner called by the defense.

The defendant also argues on appeal that the warrant lacked particularity as to the items to be seized and the places to be searched. Where these arguments were not made in the trial court, we do not consider them here.

General Laws c. 276, § 2B, requires that all of the information establishing probable cause be in the affidavit.

General Laws c. 276, § 1, provides that a court or justice is authorized to issue a warrant “if satisfied that there is probable cause” for the complainant’s sworn belief “that any of the property or articles hereinafter named are concealed in a house, place, vessel or vehicle.” The warrant must also identify the property and name or describe “the person or place to be searched.” Id.

We recognize that individuals have significant privacy interests at stake in their iPhones and that the probable cause requirement of search warrants under both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights serves to protect these interests. In its recent landmark decision of Riley v. California, 134 S. Ct. 2473, 2488-2491 (2014), the United States Supreme Court explained how the privacy interests implicated in smartphone searches “dwarf’ those in cases in which a limited information is contained in a finite space, given the volume, variety, and sensitivity of the information either stored in a smartphone or stored remotely and accessed through a smartphone. Calling a smartphone a “phone” is a “misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone.” Id. at 2489. “They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers.” Id. See Commonwealth v. Phifer, 463 Mass. 790, 797 (2012). An iPhone has the same operating system as an Apple computer. In 2014, the storage capacities of iPhones ranged from sixteen to sixty-four gigabytes. See Riley, supra at 2489. Such devices can hold hundreds of thousands of files, including millions of pages of text and thousands of photographs. See id.

Photographs received or sent as attachments to texts may be stored in the iPhone’s photograph file as well as in the text file. In addition, the iPhone can take photographs of texts, which then are stored in the photograph file.

Although some of our case law discussing searches of physical containers has employed language of “reasonableness,” see, e.g., Commonwealth v. Signorine, 404 Mass. 400, 405 (1989) (“It is clear that a valid search may include any area, place, or container reasonably capable of containing the object of the search”), in practice, most fixed premises cases still analyze whether the physical container at issue was “capable of containing the object of the search” (emphasis added). Id., quoting United States v. Percival, 756 F.2d 600, 612 (7th Cir. 1985). See Commonwealth v. Wills, 398 Mass. 768, 774 (1986) (photograph album “could have concealed a small knife” [emphasis added]). Given the differences between searches of physical and virtual places, at a minimum, the standard that governs the proper scope of a search of an electronic device, such as the iPhone here, for evidence for which probable cause has been found is whether that evidence might reasonably be found in the electronic files searched; “capable of containing” is far too broad.

The Universal Forensic Extraction Device (UFED) connects to a cellular telephone by a cable and has a port for insertion of a memory drive, on which extracted information can be stored. When connected and turned on, the UFED offers the examiner a choice of extraction methods.

In selecting short message service as the type of data to extract using the UFED, the police would have access to the content of both simple texts and “multimedia message service” texts with photographs or other items attached, regardless of whether they had been saved or deleted.

We need not resort to the plain view doctrine in this case, and we recognize that the application of that doctrine to digital file searches may, at times, need to be limited, see Preventive Med. Assocs. v. Commonwealth, 465 Mass. 810, 831-832 (2013); United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1176 (9th Cir. 2010).

While the scope of the search in this instance might have been unreasonable if the photographs had been discovered as the result of reviewing photographs received, taken, or stored long before the events leading up to the shooting, there is no argument that that occurred here.