NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12256

COMMONWEALTH  vs.  MARK PERKINS.


Suffolk.     March 7, 2017. - October 10, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, & Lowy, JJ.[1]


Controlled Substances.  Firearms.  Constitutional Law, Search and seizure, Probable cause.  Probable Cause.  Search and Seizure, Warrant, Affidavit, Probable cause.  Practice, Criminal, Motion to suppress.



Indictments found and returned in the Superior Court Department on August 13, 2014.

A pretrial motion to suppress evidence was heard by Shannon Frison, J., and a motion to reconsider was also heard by her.

An application for leave to prosecute an interlocutory appeal was allowed by Spina, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.  The Supreme Judicial Court granted an application for direct appellate review.


Nicole M. Nixon, Assistant District Attorney (Graham G. Van Epps, Assistant District Attorney, also present) for the Commonwealth.
Robert F. Hennessy (John M. Thompson also present) for the defendant.

---

[1] Justice Hines participated in the deliberation on this case prior to her retirement.

GAZIANO, J.  A Suffolk County grand jury returned indictments charging the defendant with trafficking in cocaine over 200 grams, G. L. c. 94C, § 32E (b) (4); possession of ammunition after three or more criminal convictions, G. L. c. 269, §§ 10 (h), 10G (c); and possession of an electrical weapon, G. L. c. 140, § 131J.  The indictments stemmed from a wiretap investigation by State police and Framingham police of a drug distribution network operating in Framingham, Natick, Worcester, and Boston.[2]  Based on intercepted telephone conversations between the defendant's alleged middleman and a street-level distributor of cocaine, police surveillance of a suspected drug transaction, and other information, a judge in the Superior Court in Suffolk County issued a warrant authorizing a search of the defendant's apartment for evidence including a cellular telephone and drug-related records.  The warrant also authorized police to search for a distinctive article of clothing (an orange, hooded sweatshirt) allegedly worn by the defendant at the time of the suspected transaction.  The warrant affidavit did not seek authorization to search for narcotics.  When the warrant was executed, officers seized a

---

[2] As a result of the joint investigation of the alleged trafficking network, the defendant also was indicted by a Middlesex County grand jury on cocaine trafficking charges.

large quantity of cocaine, cellular telephones, drug paraphernalia, and ammunition.

The defendant filed a motion to suppress in the Superior Court in Middlesex County. Concluding that the affidavit failed to establish either probable cause to believe that the defendant sold cocaine or a sufficient nexus between the defendant's alleged criminal activity and his apartment, a judge allowed the defendant's motion to suppress the seized evidence. A single justice of this court allowed the Commonwealth's application to pursue an interlocutory appeal in the Appeals Court, and we allowed the defendant's application for direct appellate review.

We conclude that the warrant affidavit established probable cause to believe that the defendant, acting through a middleman, sold cocaine to a street-level dealer on the date alleged. It also established a sufficient nexus between the defendant's participation in that transaction and his residence to permit a search for the cellular telephone used to arrange the sale and the sweatshirt he wore while conducting the transaction. As the motion judge determined, however, the affidavit did not provide sufficient particularized information to allow a general search of the apartment for other "drug-related" evidence. Accordingly, we remand the matter to the Superior Court for a determination, after appropriate proceedings, whether the search exceeded the permissible scope of the warrant.

1.  Background.  a.  Investigation and warrant application.
On April 30, 2014, State police Trooper Patrick M. Burke and
Framingham police Detective Robert J. Lewis applied for warrants
to search twelve residences in Middlesex, Suffolk, and Worcester
counties.  The defendant's apartment, located in a building on
Commonwealth Avenue in the Allston section of Boston, was one of
the twelve.  In support of the warrant application, the officers
submitted a 221-page affidavit that described a wiretap
investigation into a drug distribution network headed by Robert
Hairston, operating in Framingham, Worcester, Natick, Boston and
surrounding areas.  The warrant affidavit provided as follows.

Pursuant to several wiretap warrants issued in April, 2014,
officers intercepted text messages and calls between telephones
used by Hairston and other members of his organization.  Through
intercepted telephone calls between Hairston and Nasean Johnson,[3]
his alleged cocaine supplier, police learned the locations of
the transactions, the amount of cocaine Hairston agreed to
purchase from Johnson, and the purchase price.

i.  Transaction on April 23, 2014.  The affidavit alleged
that on April 23, 2014, the defendant, assisted by Johnson, who
was acting as a middleman, sold Hairston 125 grams of cocaine
for $5,200.  The affidavit relied upon a detailed description of

---

[3] The wiretap warrants did not authorize interception of
communications to and from Nasean Johnson's telephone.

cellular telephone calls intercepted on April 23, 2014, to establish probable cause that the defendant had conducted the transaction.  These calls were described as follows.

At 11 A.M., Hairston telephoned Johnson to discuss a resupply of cocaine.  In response to the question, "What's the word?," Johnson said that he had called his own supplier, referred to as "Ol' boy," and informed Ol' boy that Hairston wanted "two."  Hairston asked if the supplier would "come this way" (toward Framingham).  Johnson replied that Ol' boy would be there "if you want him to."

When Hairston complained that the $5,200 purchase price was excessive, Johnson responded that his supplier had determined the price:  "Nah, he said fifty-two, yo."  Hairston remarked that this was a "crazy" price.  Johnson reiterated that his supplier had set the price, and added, "I'm not getting nothing off it, he ain't looking out for me."  Johnson urged Hairston to let him know as soon as possible if he intended to complete the purchase, because he had to call his supplier "while it's still early."

At 12:08 P.M., police intercepted a telephone call in which Hairston and Johnson agreed to meet at the Natick Mall at 2 P.M. to complete the transaction.  Johnson also mentioned that his supplier would be coming from Brighton.  Later, Hairston and

Johnson arranged to meet at a particular department store parking lot.

At 2:35 P.M., Hairston informed Johnson that he was arriving at the parking lot.  A few minutes later, a police officer observed the defendant, wearing an orange, hooded sweatshirt (hoodie) and jeans, walking from a restaurant into the parking lot.  At 2:37 P.M., Johnson telephoned Hairston.  While they were trying to locate each other in the parking lot, Hairston thought that he had spotted Johnson wearing a hoodie, but immediately corrected himself.  "Oh I see you, that's you in the hoodie?  Nah, that's not you in the hoodie.  Hell no."  Johnson told Hairston that the person in the hoodie was his associate.  "Yeah, yeah, keep going that my peeps."

At approximately 2:40 P.M., police observed Hairston enter a Nissan Altima automobile, driven by Johnson, parked in a parking space directly across from the entrance to the department store.  A few minutes later, Hairston got out of the Altima and entered his Audi vehicle.  Johnson then left the Altima and approached the Audi.  After a brief conversation with Hairston, Johnson re-entered the Altima and left the parking lot.

Surveillance officers followed the Altima.  After approximately twenty minutes, at 3:02 P.M., uniformed officers stopped the vehicle on the purported ground of a traffic

violation.  They identified the defendant as the individual driving the vehicle and Johnson as the passenger.  When the defendant opened the glove compartment to retrieve his registration, they saw a bundle of cash, later determined to be $5,200.

During the course of the stop, at 3:10 P.M., police intercepted a telephone call between Hairston and Johnson, in which Hairston complained that the cocaine he had just purchased was "wet."  Johnson told Hairston that he would have to call back "because I just got pulled over."

At 3:24 P.M., Johnson telephoned Hairston.  Johnson said that his supplier had advised him that the cocaine would dry out in approximately one hour.  Johnson added that his supplier promised to make it up to Hairston on the next purchase.  "[B]ut on the next one he's got you."

b.  Search of the defendant's apartment.  On April 30, 2014, a judge of the Superior Court in Suffolk County issued a search warrant authorizing police to search the defendant's apartment for evidence of his participation in the cocaine distribution network.  The warrant authorized the seizure of records, in paper or electronic form, related to the defendant's alleged drug distribution business; records related to the financial proceeds stemming from that business; currency used to purchase or sell cocaine; paraphernalia used in the distribution

of cocaine; cellular telephones used to further the defendant's alleged drug distribution business, including cellular telephones showing evidence of contact with Johnson's telephone number; personal contact lists; any documentation identifying persons having custody or control over the premises or its contents; and the orange, hooded sweatshirt the police observed during the April 23, 2014, drug transaction.

Police executed the warrant on May 1, 2014.  According to the search warrant return, they seized three bags of cocaine, a scale, two ice cube trays, a bottle of Inositol powder, paper containing white powdery residue, $1,000 in cash, nine cellular telephones, an Apple iPad brand tablet computer, one round of ammunition, a stun gun, a container for a "concealed carry deep cover holster," a checkbook in the names of the defendant and his girl friend, one white circular pill, and miscellaneous paperwork.[4]

c.  Prior proceedings.  As stated, the defendant filed a motion in the Superior Court to suppress all evidence seized during the execution of the search warrant.  A judge of that court allowed the defendant's motion on the grounds that the search warrant affidavit failed to establish either the defendant's involvement in the drug transaction or a sufficient

---

[4] Police did not find an orange hooded sweatshirt.

nexus between the alleged drug transaction and his apartment. The Commonwealth sought reconsideration of the suppression order and written findings and rulings. After an evidentiary hearing, the judge issued the requested written findings and denied the motion for reconsideration.

2. Discussion. a. Standard of review. Under both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, a search warrant may issue only upon a showing of probable cause. Commonwealth v. Valerio, 449 Mass. 562, 566 (2007). In reviewing a determination that there was probable cause to issue a search warrant, we consider the facts contained within the "four corners of the [search warrant] affidavit" (citation omitted), see Commonwealth v. O'Day, 440 Mass. 296, 297 (2003), and the reasonable inferences to be drawn from them. See Commonwealth v. Martinez, 476 Mass. 410, 415 (2017). To establish probable cause, the facts contained in the warrant affidavit, and the reasonable inferences drawn from them, must be sufficient for the issuing judge to conclude that the police seek items related to criminal activity and that the items described "reasonably may be expected to be located in the place to be searched at the time the warrant issues" (citation omitted). Commonwealth v. Walker, 438 Mass. 246, 249 (2002).

The question whether there was probable cause to issue the search warrant is a question of law that we review de novo, see Commonwealth v. Tapia, 463 Mass. 721, 725 (2012), in a commonsense and realistic manner.  See Commonwealth v. Molina, 476 Mass. 388, 394 (2017); Commonwealth v. Cruz, 430 Mass. 838, 840 (2000).  A reviewing court reads the warrant affidavit as a whole, without overly parsing or severing it, or subjecting it to "hypercritical analysis" (citation omitted).  Commonwealth v. Donahue, 430 Mass. 710, 712 (2000).  See Commonwealth v. Anthony, 451 Mass. 59,68 (2008) ("In dealing with probable cause . . . we deal with probabilities.  These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act" [citation omitted]).

b.  Whether the warrant affidavit established probable cause to believe that the defendant participated in the April 23 drug transaction.  In allowing the defendant's motion to suppress, the motion judge determined that police had "absolutely no information that they provided the issuing Justice as to the role or duties of Mark Perkins in the alleged drug conspiracy."  Drawing all reasonable inferences from the information set forth in the affidavit, we conclude that the search warrant affidavit established probable cause to believe

that the defendant participated in the April 23, 2014, drug transaction.

First, it is reasonable to infer from the affidavit that Johnson acted as a middleman for the April 23, 2014, sale of 125 grams of cocaine to Hairston.  This inference is supported by several statements made during the 11 A.M. telephone conversations between Hairston and Johnson in which Hairston sought to purchase cocaine.  Johnson told Hairston that he had called another individual, nicknamed Ol' boy, and informed him that Hairston "wanted two."  Johnson offered, and Hairston agreed, that "Ol' boy" should "come this way."  When Hairston commented that the price was excessive, Johnson informed Hairston that his supplier had set the purchase price, and that Johnson himself was not being compensated for arranging the transaction.  "That's what he said, fifty-two.  I'm not getting nothing off it, he ain't looking out for me."  At the end of the conversation, Johnson said, "So if you want to make that move I have to call him while it's still early.  You know?"

Second, it was reasonable for the issuing judge to have inferred that the defendant was Johnson's source of supply.  In another telephone call with Hairston, Johnson indicated that his source would come from Brighton and would meet them at the Natick Mall at 2 P.M.; the defendant lived in Allston, a section of Boston adjacent to Brighton and arrived at the mall at

approximately 2:35 P.M. While Hairston and Johnson were attempting to locate each other in the parking lot, Hairston asked, "Oh I see you, that's you in the hoodie?" and Johnson responded, "Yeah, yeah, keep going[;] that my peeps." At the same time, police saw the defendant in the parking lot near an ice cream store where Hairston was standing; the defendant was wearing an orange, hooded sweatshirt and had a cellular telephone pressed to his ear.

After Hairston had entered the Altima where Johnson was seated, then returned to his Audi, the defendant drove the Altima out of the parking lot, with Johnson as his passenger. When police stopped the Altima under the ruse of a traffic violation, they saw $5,200 in cash (the same amount as the purchase price that had been discussed) in the glove compartment. While the Altima was stopped, Hairston telephoned Johnson to complain that the cocaine he had just purchased was "wet." Johnson said he would have to call later because he had just been pulled over by police. Johnson then telephoned Hairston a few minutes later and assured him that "he" had said to let the cocaine dry and that "he" had said he would make good on a future transaction. Based on this series of telephone calls and events, a reasonable inference could be drawn that the source Johnson referenced was the defendant, who was present in the Altima with Johnson at that time.

c.  Whether the search warrant affidavit established a sufficient nexus to the defendant's apartment.  "Information establishing that a person is guilty of a crime does not necessarily constitute probable cause to search the person's residence."  Commonwealth v. Cinelli, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983).  See Commonwealth v. Matias, 440 Mass. 787, 794 (2004).

To establish probable cause to search an individual's house, the search warrant affidavit must establish a "substantial basis for concluding that evidence connected to the crime will be found on the specified premises. "  Tapia, 463 Mass. at 726, quoting Commonwealth v. Donahue, 430 Mass. 710, 712 (2000).  The nexus between the crime alleged and the place to be searched "need not be based on direct observation." Matias, 440 Mass. at 794, quoting Cinelli, 389 Mass. at 213. "No bright-line rule can establish whether there is a nexus between suspected drug dealing and a defendant's home." Commonwealth v. Escalera, 462 Mass. 636, 643 (2012).  The nexus to search a residence for evidence of a crime "may be found in the type of crime, the nature of the . . . items [sought], the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide [items of the sort sought]" (quotations and citation omitted). Cinelli, supra.

We consider in turn the individual items to be searched as listed in the warrant to determine whether there was a sufficient nexus between the item and the defendant's home.

i. Cellular telephones. The defendant argues that the warrant affidavit did not set forth specific information connecting his alleged criminal activity to his apartment. He asserts that in Commonwealth v. White, 475 Mass. 583 (2016), this court rejected "nearly identical efforts by the Commonwealth to rely on general considerations to establish probable cause to search a cellular telephone." We conclude that the search warrant affidavit established probable cause to search the defendant's apartment for the cellular telephone he used to arrange the April 23, 2014, transaction.

The search warrant authorized police to search the defendant's residence for "[c]ellular telephones used to facilitate narcotics transactions, including [a] telephone with unidentified call number, showing evidence of contact with [a specific telephone number] ('Nasean Johnson Phone')" and "[p]ersonal contact lists or telephone directories, in paper or electronic form, which reflect the names or nicknames of parties associated with telephone numbers, including the electronic contact lists of cellular telephones."

In Commonwealth v. White, 475 Mass. at 590, we noted that the police "did not have any information that [a] cellular

telephone was used in the crime under investigation." Rather, they believed that if the defendant had planned and committed multiple crimes with two accomplices, it was likely that he had communicated with the accomplices by using his cellular telephone, and, accordingly, likely that evidence of these communications would be found on the device. Id. We determined that "police may not seize or search . . . a cellular telephone to look for evidence unless they have information establishing the existence of particularized evidence likely to be found there." Id. See Commonwealth v. Broom, 474 Mass. 486, 496-497 (2016) ("general" and "conclusory" opinion by affiant that individual is likely to store information in cellular telephone does not satisfy probable cause standard).

In this case, however, quite unlike the situation in White, police had detailed and specific knowledge concerning the defendant's use of a cellular telephone to arrange drug transactions, and a particular telephone number with which that cellular telephone had been in contact at a specific time. The affidavit established probable cause to believe that the defendant had used a cellular telephone to arrange cocaine sales through Johnson, his middleman. During the intercepted 11 A.M. telephone conversation between Johnson and Hairston, Johnson twice mentioned calling his supplier. When Hairston, who was seeking to purchase cocaine, asked, "Well, ah, what's the word?"

Johnson responded, "I called Ol' boy too, man."  At the end of
the conversation, when the two discussed the price charged by
"Ol' boy," Johnson told Hairston, "So, if you want to make that
move I have to call him while it's still early.  You know?"
[Emphases added.]

Police also made direct observations corroborating a number
of the statements made in the calls.  They observed the
defendant arrive in the parking lot where the transaction had
been arranged to take place at the scheduled time, talking on a
cellular telephone while moving towards an ice cream store
described in the intercepted conversations.  The defendant left
the parking lot with Johnson immediately after the presumed drug
transaction.  Thus, it was reasonable to infer that Johnson kept
the defendant informed about the transaction as those plans
evolved throughout the afternoon.  Because there was probable
cause to believe that the defendant had used a cellular
telephone to arrange the drug sale, through Johnson as
intermediary, and that he had used cellular telephones to
arrange drug transactions on other occasions, the warrant
affidavit sought to seize all of the cellular telephones found
in the defendant's apartment.  We conclude that the seizure of
the nine telephones found in the apartment was supported by
probable cause.  See Molina, 476 Mass. at 396-397 (probable
cause existed for search warrant to seize all computers at

defendant's apartment where evidence showed a particular IP address had been used to acquire child pornography and all computers on router in defendant's house shared that IP address).

The conclusion that the warrant affidavit established a sufficient nexus to search the defendant's apartment for the cellular telephone used to communicate with Johnson on April 23, 2014, does not mean, however, that police had unlimited discretion to search every portion of the nine cellular telephones seized from the apartment. The Fourth Amendment, art. 14, and G. L. c. 276, § 2, require that a search warrant describe with particularity the places to be searched and the items to be seized. See Molina, 476 Mass. at 394. "By defining and limiting the scope of the search, these constitutional and statutory particularity requirements prohibit general warrants amounting to 'exploratory rummaging in a person's belongings.'" Id., quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). See Commonwealth v. Dorelas, 473 Mass. 496, 499 n.3 (2016) (examining whether warrant to search cellular telephone was overly broad).

Here, the warrant established probable cause to search the call logs of the nine seized telephones to determine which, if any, had contacted the telephone number belonging to Johnson. In addition, the police were authorized to search the telephone

contact lists to determine whether there was evidence that the defendant was associated with Johnson. See Dorelas, 473 Mass. at 502 (search of cellular telephone files "must be done with special care"); Commonwealth v. Berry, 463 Mass. 800, 807 (2012) (distinguishing between limited search of cellular telephone to view recent call activity and more intrusive search of device). The police were not authorized to rummage through the entirety of the defendant's cellular telephones, and were confined by the plain terms of the warrant affidavit to call activity and contact lists. See Dorelas, supra, at 510 ("no impediment to limiting the search to certain types . . . of files stored in specific sections" of cellular telephone).

ii. The orange sweatshirt. As an initial matter, the defendant argues that the Commonwealth's contention that there was probable cause to search for the orange sweatshirt was not raised before the motion judge, and therefore it may not be considered as a basis for reversing the order allowing his motion to suppress. See Commonwealth v. Bettencourt, 447 Mass. 631, 633-634 (2006) (arguments not raised below by Commonwealth in connection with motion to suppress are usually not considered on appeal as basis for reversal). We do not agree.

In its opposition to the defendant's motion to suppress, the Commonwealth stated that the issuing judge authorized the police to seize an "[o]range[,] hooded sweatshirt, as observed

April 23, 2014[,] in Natick." The Commonwealth then argued that the defendant's appearance at the Natick mall during the April 23, 2014, drug transaction was evidence of his participation in the drug trafficking conspiracy. While focused on other items sought under the search warrant, the Commonwealth's argument in opposition to the motion to suppress ultimately addressed the sufficiency of the warrant affidavit to establish probable cause to search for all of the listed items. Contrast Bettencourt, 447 Mass. at 633-634 (court did not consider Commonwealth's argument that State trooper's actions were justified because actions were taken pursuant to trooper's community caretaking function, where argument was raised for first time on appeal).

A warrant affidavit may, in particular circumstances, establish probable cause to search for articles of clothing, including at a suspect's residence, to identify a suspect in a criminal investigation. "There is no prohibition against seizure of articles of clothing to be used for evidentiary purposes where, as here, there is a nexus between these articles and the crime." Commonwealth v. Murray, 359 Mass. 541, 547 (1971). See Commonwealth v. Perez, 357 Mass. 290, 292-293, 298 (1970) (probable cause for seizure of blood-stained articles of clothing at dry cleaner to aid in identification aspect of investigation). In Commonwealth v. Cavitt, 460 Mass. 617, 627-628 (2011), we held that police had probable cause to search an

apartment for clothing, including red and white sneakers, to identify a defendant as the suspected robber. In Commonwealth v. James, 424 Mass. 770, 774 (1997), police sought to search suspects' homes for dark clothing, based on eyewitness account of the events surrounding a killing. We held that the search was valid given that the evidence, which could help identify the suspects as the perpetrator, was "durable, of continuing utility to the defendants, and it was reasonable to expect that they would be kept at home, particularly as they are not inherently incriminating to possess." Id. at 778.

The defendant argues that, because the affiants already had positively identified the black male wearing an orange, hooded sweatshirt as the defendant during the motor vehicle stop on the day of the drug transaction, the affidavit did not provide probable cause to believe that recovery of the orange sweatshirt would meaningfully aid in a particular apprehension or conviction in this case.

"The Fourth Amendment does not bar a search for evidence to prove the commission of a crime[,] provided there is probable cause for the belief that the evidence sought will aid in a particular apprehension or conviction." Murray, 359 Mass. at 547. See Matter of Lavigne, 418 Mass. 831, 835 (1994), quoting Murray, supra ("a search for evidence to prove the commission of a crime [is not barred] provided there is probable cause for the

belief that the evidence sought will aid in a particular apprehension or conviction."

The orange sweatshirt, if found in the defendant's apartment, would have been relevant to his identification as the seller in the transaction.  The Commonwealth could have used the sweatshirt to corroborate police observations of the defendant in the department store parking lot at the time of the intercepted exchange between Hairston and Johnson.  This could, in turn, have assisted the Commonwealth to prove that the defendant was the supplier who promised to be present at the exchange.  The fact that the officers who submitted the search warrant affidavit had identified the defendant during the motor vehicle stop, which occurred approximately twenty minutes after the drug transaction, did not negate the sweatshirt's evidentiary value.  See Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 306-307 (1967) (government may seize evidence simply for purpose of proving crime).

Our probable cause analysis requires that the affidavit "provide[] the magistrate with a substantial basis for concluding that any of such articles was probably present in the [residence]."  See Commonwealth v. Stewart, 358 Mass. 747, 749 (1971).  Because the warrant application set forth facts derived from the registry of motor vehicles and direct police observation that the defendant lived at the apartment named in

the search warrant affidavit, it was reasonable to infer that the defendant likely kept his clothing, including the orange sweatshirt, in this apartment.  See James, 424 Mass. at 778 (suspect's clothing reasonably expected to be kept at home, particularly given that it is not inherently incriminating to possess items of clothing).

iii.  Drug records, proceeds, and paraphernalia.  The Commonwealth maintains that "circumstantial evidence coupled with the affiant's specialized knowledge concerning the logistics of narcotics distribution established probable cause" to search for drug-related evidence, including proceeds and records of drug distribution, in the defendant's apartment.  The Commonwealth points out that the nexus between the crime alleged and the place to be searched may be established through normal inferences as to where such items are typically kept, see Cinelli, 389 Mass. at 213, and that a reviewing court may consider the experience and expertise of a police officer in making this determination, see White, 475 Mass. at 589.  This does not establish the nexus the Commonwealth suggests.

The affidavit here did not contain sufficient particularized information to justify a search of the defendants apartment for drug-related records, proceeds, and paraphernalia. The affidavit included a single, conclusory statement that probable cause existed based on the affiant's "training and

experience and the facts and circumstances learned during the course of this investigation."[5]  The affidavit contained no facts, or opinion based upon the affiant's considerable experience as a narcotics officer, that would have establish probable cause to believe that the defendant would be likely to store particular items of evidence in his home.  Contrast Commonwealth v. Lima, 80 Mass. App. Ct. 114, 118-119 (2011) (affidavit premised on police officer's specialized knowledge supported inference that drug organization utilized specific dwelling to store proceeds and records); Commonwealth v. Santiago, 66 Mass. App. Ct. 515, 521-522 (2006) (magistrate entitled to rely on specific facts drawn from police officer's experience to support affiant's conclusion that records, ledgers, or proceeds were contained in particular dwelling).  Accordingly, we affirm the motion judge's determination that the affidavit failed to establish probable cause to conduct a general search for drug-related evidence.

3.  Conclusion.  The order allowing the defendant's motion to suppress is vacated and set aside.  The matter is remanded to the Superior Court for further proceedings consistent with this

---

[5] The Commonwealth maintains that the affiants offered an opinion concerning records typically maintained by drug dealers. This opinion, found in an appended affidavit submitted in support of an application for a wiretap, concerned the general structure of a drug organization, and did not address the type of evidence that would be found in this defendant's residence.

opinion, to determine, consistent with this opinion, whether the search exceeded the permissible scope of the warrant.

So ordered.