SUPERIOR COURT 
 
 COMMONWEALTH vs. WILSON RUIZ-MARTINEZ

 
 Docket:
 2284CR00510
 
 
 Dates:
 July 15, 2024
 
 
 Present:
 William F. Bloomer Justice of the Superior Court
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE {Paper No. 37)
 
 

             The defendant, Wilson Ruiz-Martinez ("Ruiz-Martinez"), moves to suppress all evidence seized by police from 31 Gayland Street, Apartment #3 in Dorchester, as well as a storage room located in the basement of that address. fallowing a hearing, and for the reasons set forth below, Ruiz-Martinez's motion to suppress is DENIED.
FINDINGS OF FACT
            On May 7, May 23, and June 20, 2024, the court heard testimony from Sergeant Detective John A. McCarthy ("McCarthy") of the Boston Police Department ("BPD") Area B-2 Drug Control Unit ("DCU") and received six exhibits in evidence. Ruiz-Martinez did not testify. The court makes the following factual .findings based on the credible evidence produced at the hearing and the reasonable inferences drawn from that evidence. In making these findings, the court finds the testimony of McCarthy truthful and accurate on the relevant and material points set forth below.
            fallowing a two-month investigation, McCarthy applied for three warrants authorizing the search of: (1) the person of Ruiz-Martinez, (2) a white Toyota Corolla, bearing plate number 2PPN37, and (3) 31 Gayland Street, Apartment #3, Dorchester, MA ("Apartment #3"). All three
 
                                                            -1-
 
warrants sought authorization to search for cocaine, cocaine distribution paraphernalia, money, personal papers, keys to the Apartment #3, and notes, ledgers, and/or communication devices. One affidavit was submitted in suppo11 of the three search warrant applications.
            On March 8, 2022, a clerk magistrate from the Roxbury Division of the Boston Municipal Court issued the three warrants. The defendant does not challenge the issuance of the warrants for his person and the car. The court, therefore, focuses solely on the application for the warrant authorizing the search of Apartment #3.
            McCarthy's affidavit states that, during the third week of January 2022, DCU officers received information that a Hispanic male was selling and distributing heroin and cocaine in the Boston area. The person providing this information did not state where this Hispanic male stored his narcotics, but s/he did supply police with a specific telephone number that s/he stated the Hispanic male used to facilitate drug transactions. Utilizing that phone number, an undercover officer contacted Ruiz-Martinez and arranged to purchase cocaine from him on four occasions.
            The first sale occurred outside a business on Dudley Street after Ruiz-Martinez drove to the location and had a female conduct (or " middle") the actual hand-to-hand transaction with the undercover officer. During the second controlled purchase, after the undercover officer telephoned the defendant and arranged to purchase cocaine from him, Ruiz-Martinez exited 31 Gayland Street and walked to a location where he met the undercover officer and sold cocaine to the officer. After the transaction, Ruiz walked back to 31 Gayland Street and entered the building, whereupon a surveillance officer observed the lights on the third floor of the structure illuminate. During the third transaction, after the undercover officer called the defendant and arranged to purchase cocaine from him, surveillance officers observed Ruiz-Martinez arrive at and enter 31 Gayland Street with a set of keys. The undercover officer placed a second call to
 
                                                            -2-
 
Ruiz-Martinez. The defendant exited the building within minutes of the call, entered his vehicle, and drove to a location where he sold cocaine to the undercover officer. Ruiz-Martinez then engaged in conduct consistent with counter-surveillance, and officers terminated surveillance of him at that time. During the final purchase, within minutes of the undercover officer telephoning the defendant and arranging to purchase cocaine from him, Ruiz-Martinez exited 31 Gayland Street and walked to a location where he met the undercover officer and sold cocaine to the officer. After selling cocaine to the undercover officer, surveillance officers observed Ruiz- Martinez engage in a transaction with a male that was consistent with a drug sale.
            On March 10, 2022, McCarthy and other officers executed search warrants Ruiz- Martinez, the Toyota Corolla, and Apartment #3. The building at 31 Gayland Street in Dorchester is a triple-decker brownstone building. There are three apartments in the building - one on each floor. Apartment #3 is located on the third floor of the building.  From the front door, there is a narrow stairwell that leads to Apartment #2 on the second floor and Apartment #3 on the third floor.
            Prior to entering 31 Gayland Street, McCarthy and other offices approached the defendant and recovered a set of keys from him.[1] Ruiz-Martine z stated that the keys did not belong to Apartment #3; rather, he told officers that the keys went to his apartment at 99 Blue Hill Avenue. Around this time, Maria Baez approached McCarthy and other officers. She was informed of the existence of the search warrant for Apartment #3 and provided the keys to investigators so they could make peaceful entry into the apartment.[2] Upon arriving at the front
 
--------------------------------------------
 
[1] Police did not seize contraband from the defendant or the Toyota Corolla.
[2] Later, McCarthy inserted one of the keys taken from Ruiz-Martinez into the lock in the door to Apartment 113 and determined that it freely engaged the lock tumbler.
 
                                                            -3-
 
door to the apartment, police knocked and announced their presence and made entry without incident using the keys provided by Maria Baez. Oscar Baez, Maria Baez's son, was present.[3]
            During a search of the inside of the apartment, investigators seized approximately fourteen items related to narcotics distribution. On the rear porch, officers found two small plastic bags containing cocaine inside a sock, $40 in U.S. currency, and paperwork in the defendant's name. DCU officers also found $1,120 in a bedroom inside the apartment as well as Ruiz-Martinez 's passport, his Dominican driver's license, and other documents in his name.
            While the search of the interior of the apartment proceeded, McCarthy and other officers went to the basement of the building. McCarthy testified that he and other officers always search common areas of buildings when executing search warrants. Investigators accessed  the basement by walking down a flight of stairs inside the building after exiting the apartment through a rear door. The stairway leading to the basement is situated between the rear door to the apartment and the third-floor porch off the back of the building. The door leading into the basement was unlocked.
            Once in the basement, police observed three rooms with doors marked 1 through 3 from left to right. There being only three apartments in the building, McCarthy believed door number "3" corresponded with Apartment #3. He tried the keys taken from the defendant to no avail. Another officer found a key on top of the frame to a door leading to a washroom directly across from the doors l through 3. Officers entered storage room# 3 using that key. Inside this room detectives found a large quantity of cocaine, scales, and diluent used to "cut" cocaine.
 
--------------------------------------------
 
[3] The defendant sought to have Maria and Oscar 13aez testify at the motion hearing, but the court sua sponte appointed counsel for them and found they had a valid Fifth Amendment and art. 12 right not to incriminate themselves. 130th witnesses asserted their privilege and refused to testify.
 
                                                            -4-
 
      McCarthy observed that one of the walls was partially sheet rocked with insulation exposed. Based on his experience and training, McCarthy believed that additional cocaine could be hidden in this portion of the wall. He looked behind the exposed insulation and found a large quantity of fentanyl. All contraband and items of evidentiary significance were seized.
RULINGS OF LAW
 
            The Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights require a magistrate to determine that probable cause exists before issuing a search warrant. Commonwealth v. Dorelas, 473 Mass. 496, 501 (2016). The court's inquiry as to the sufficiency of a search warrant application begins and ends with the four corners of the affidavit. Id. at 500-501. To establish probable cause, the affidavit must contain a substantial basis for concluding that the items sought are related to the criminal activity under
investigation and may reasonably be expected to be located in the place to be searched at the time the search warrant issues. Id. An affidavit should be read as a whole in a commonsense and realistic fashion, and not parsed, severed, or subjected to hypercritical analysis. Id. at 501. The factual inferences drawn in the affidavit need only be reasonable and possible, not necessary or inescapable. Commonwealth v. Cavitt, 460 Mass. 617, 626 (2011). When determining whether an affidavit supported a finding of probable cause, the court "give[s] considerable deference to the magistrate' s determination." Commonwealth v. Andre-Fields, 98 Mass. App. Ct. 475,486 (2020).
            I. Nexus - 31 Gayland Street, Apartment #3
            Ruiz-Martine z primarily argues that the affidavit submitted in support of the warrant application fails to establish a sufficient nexus between the crime of cocaine distribution and 31 Gayland Street, Apartment #3. The affidavit detailing four controlled purchases of cocaine by an
 
                                                            -5-
 
 undercover police officer from Ruiz- Martinez sets forth sufficient information for the issuing magistrate to have concluded that the defendant was involved in the unlawful distribution of cocaine. The affidavit also contains sufficient information for the magistrate to have concluded that Ruiz-Martinez resided at, or at the very least had access to Apartment #3, including his statement to uniformed officers within seven days of the issuance of the warrant that he resided on the third floor of 31 Gayland Street. A magistrate may not reasonably infer that drugs arc being stored in a residence, however, based solely on the fact that the defendant, a drug dealer, lives there. Commonwealth v. Escalera, 462 Mass. 636, 643 (2012); Commonwealth v. Pina, 453 Mass. 438, 441 (2009). "No bright line rule can establish whether there is a nexus between suspected drug dealing and a defendant's home." Escalera, 462 Mass. at 643. The affidavit must contain specific information that ties the defendant's residence to illegal drug transactions. Id.; Commonwealth v. Smith, 57 Mass. App. Ct. 907, 908, rev. denied, 439 Mass. 1105 (2003). However, a warrant application need not establish to a certainty that drugs will be found in the specified location, nor need it exclude all possibility that the items might be found elsewhere. Escalera, 462 Mass. at 646.
            When a defendant conducts drug transactions within close proximity to his residence and does not make use of a vehicle, it is reasonable to infer that drugs are stored in his residence. Commonwealth v. Young, 77 Mass. App. Ct. 381, 388 (2010). Further, when a defendant returns directly home after receiving a recorded amount of currency from a confidential informant or undercover officer, it is reasonable for a magistrate to determine that monies derived from the sale of drugs could be located in the defendant's residence. Id. "[T]he suspect' s location immediately prior to the sale is of [ ] significance to the nexus determination ... Before a sale,
 
                                                            -6-
 
the drug dealer is either in possession of drugs, or must proceed to a location to obtain the drugs." Escalera, 462 Mass. at 645.
            "[E]ven ' [a] single observation of a suspect leaving his home for a drug deal may [ ] support an inference that drugs will be found in the home where it is coupled with other information."' Commonwealth v. Tapia, 463 Mass. 721, 726 (2012), quoting Escalera, 462 Mass. at 644. "[T)here need not be a definite proof that [a] seller keeps his supply at his residence          [I]t will suffice if there are some additional facts [that) would support the
inference that the supply is probably located there." Escalera, 462 Mass. at 645, quoting 2 W.R. LaFave, Search and Seizure§ 3.7(d), at 420-421 (4th ed. 2004).
            Police conducted four controlled buys of narcotics from the defendant using recorded money throughout the investigation. During two of the four controlled buys, officers observed the defendant exit 31 Gayland Street after receiving a call from the undercover officer and proceed directly to the location of the sale on foot. On one of these occasions, officers then observed the defendant immediately return to and enter 31 Gayland Street. On an additional occasion, after the undercover officer called the defendant to arrange to purchase narcotics, officers observed the defendant arrive at and enter Apartment #3 before exiting the building, entering his vehicle, and proceeding to the location of the sale.
            The affidavit established a sufficient nexus between the defendant's drug dealing and Apartment #3 and, therefore, sufficiently established probable cause to search dwelling. The magistrate could infer from the defendant's conduct of leaving 31 Gayland Street on foot, proceeding to the location of the sale, and then returning to the dwelling that the defendant stored narcotics at Apartment #3. The magistrate could also reasonably draw this inference from the fact that, after the undercover officer called the defendant to arrange to purchase narcotics, the
 
                                                            -7-
 
defendant returned to Apartment #3 before proceeding to the location of the sale. This behavior lends itself to an inference that the defendant stopped at Apartment #3 to retrieve narcotics before proceeding to the location of the sale.[4]
            II. Curtilage - Basement Storage Unit
            The defendant next argues that the search warrant did not extend to the basement storage unit and, therefore, the search of the  unit constituted  a  warrantless search.  The concept  of curtilage "helps to define where the police can search pursuant to a warrant." Commonwealth v. McCarthy, 428 Mass. 871, 874 (l 999). "In deciding whether a property 's curtilage extends to a specific area, [the court] may consider ' four factors: the proximity of the area claimed to  be curtilage to the home, whether the  area  is included  within an  enclosure  surrounding  the home, the nature of the uses to which the area is put, and the steps taken  by the  resident  to protect  the area from observation by people passing  by."'  Commonwealth  v. Pierre, 7 l  Mass.  App. Ct.  58, 62 (2008), quoting United States v. Dunn, 480 U.S. 294,301 (1987).
            The inquiry into whether the storage unit is within the curtilage of Apartment #3 begins with the determination of whether the basement constituted curtilage. Access to the basement is unrestricted. " A search of a basement as a common area may not require a warrant when a defendant lacks exclusive access." Id., citing Commonwealth v. Pacheco, 2l Mass. App. Ct. 565,569 n.4 (1986). "[U]nrestricted access to the basement and the presence of multiple storage
 
--------------------------------------------
 
[4] Ruiz-Martinez did not argue or brief the issue of staleness with respect to the information contained in McCarth y's affidavit, and therefore the matter is deemed waived. See Mass. R. Crim. P. 13(a)(2). In any event, the warrant application also sought authorization to search the apartment for records related to cocaine distribution and communication devices, which would include the cellphone the undercover officer used to contact Ruiz- Martine z to purchase cocaine on four occasions. See Commonwealth v. Rodriguez, 75 Mass. App. Ct. 290, 299 (2009) (a "[criminal] enterprise requires instrumentalities and generates records"); Commonwealth v. Janvier, 104 Mass. App. Ct. 93, 101 (2024) (cellphones are considered "durable goods").
 
                                                            -8-
 
lockers there creates the reasonable inference that the defendant did not exclusively control access to the area." Id.
            Like the basement in Commonwealth v. Pierre, the relationship between the defendant's apartment and the basement meets the curtilage test set out in United States v. Dunn. The stairs to the basement, situated between the rear door to the apartment and the apartment's back porch, suggest the basement was sufficiently proximate to the apartment. Compare Pierre, 71 Mass. App. Ct. at 62 (stairs in defendant's kitchen linking apartment to basement suggest basement sufficiently proximate to apartment). Additionally, while two floors separated the apartment and the basement, "the curtilage of the apartment could still cover the basement with respect to 'separate areas subject to the [tenant's] exclusive control."' Id. at 63, quoting Commonwealth v. McCarthy, 428 Mass. at 876. Because the storage units in the basement correspond to an apartment in the building, "[i]t is reasonable to infer that the tenants have exclusive access and therefore control over the [storage area] assigned to their respective apartment." Id. Therefore, the basement is located within the curtilage of the apartment and the warrant authorized the search of the basement. See id.[5]
ORDER
            For the foregoing reasons, Ruiz-Martinez's motion to suppress is DENIED.
 
--------------------------------------------
 
[5] In support of his argument that the basement unit was not within the curtilage of Apartment 113, the defendant offers the lease to the premises which instructs tenants not lo store items in the basement. Were one to presume the locked basement unit was not within the curtilage of Apartment lt3, Ruiz-Martinez has failed to meet his threshold burden to establish that a warrantless "search" occurred in the constitutional sense. See Commonwealth v. DeJesus, 489 Mass. 292, 293 & n.3 (2022) (defendant must show reasonable expectation of privacy in place to be searched). Ruiz-Martinez's affidavit asserts no such expectation of privacy in basement storage unit #3.